Argued and submitted August 21, 2006, reversed and remanded May 23, 2007

James SPIVAK
and Gary Spivak,
co-personal representatives for the Estate of
Henry Spivak, deceased,
dba Mr. Car Wash,
*Plaintiffs-Appellants,*

*v.*

Dean C. MARRIOTT
and City of Portland
Bureau of Environmental Services,
*Defendants-Respondents.*

Multnomah County Circuit Court
040100327; A126249

159 P3d 1192

Lindsey H. Hughes argued the cause for appellant. With her on the briefs was Keating Jones Bildstein & Hughes, P.C.

Harry Michael Auerbach, Chief Deputy City Attorney, argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Wollheim, Judge.*

BREWER, C. J.

---

\* Edmonds, P. J., *vice* Linder, J.; Wollheim, J., *vice* Ceniceros, S. J.

## BREWER, C. J.

James and Gary Spivak, personal representatives of the estate of Henry Spivak, dba Mr. Car Wash, appeal from a judgment that dismissed plaintiff's[1] petition for a writ of review and his constitutional, conversion, and contract claims against defendants City of Portland Bureau of Environmental Services (the city) and Dean C. Marriott, the Bureau's director. We reverse and remand.

The trial court granted defendants' motion under ORCP 21 A to dismiss plaintiff's petition for a writ of review and thereafter granted defendants' motion for summary judgment on the remaining claims. We therefore accept as true all of the well-pleaded allegations in the petition for a writ of review and give appellants the benefit of all favorable inferences that may flow from the facts that plaintiff alleged in that petition. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999); *Carvalho v. Wolfe*, 207 Or App 175, 177, 140 P3d 1162 (2006). On the remaining claims, we state the facts most favorably to appellants, the nonmoving parties, drawing all reasonable inferences in their favor. ORCP 47 C; *Schaff v. Ray's Land & Sea Food Co., Inc.*, 334 Or 94, 98-99, 45 P3d 936 (2002).

The dispute between plaintiff and the city arose from a disagreement over the city's charges for plaintiff's use of the city's sewer at plaintiff's car wash. The city normally bases its charges for sewer use on the amount of water that the customer purchases; it assumes that every unit of water coming into the business goes out through the sewer system. The city code, however, permits a customer to have a "sub-meter" installed to measure actual sewer usage and to have the charges based on what that meter shows. Plaintiff believed that his car wash recycled most of its water and that only a relatively small portion of the amount of water that came into

---

[1] The petitioner in the writ of review proceeding, and the plaintiff on the remaining claims, was Henry Spivak, dba Mr. Car Wash. The city and Marriott were respondents to the writ of review and defendants on the remaining claims. To avoid confusion, we refer to Henry Spivak as plaintiff, and to the city and Marriott as defendants, on all of the claims in the trial court. Henry Spivak died during the course of the appeal, and we refer to the personal representatives of his estate as appellants.

the car wash system actually went out through the sewer. In 1994, plaintiff and James Spivak, his son, had a number of conversations and meetings with employees of the city's Bureau of Environmental Services about the situation. Plaintiff later alleged that the city misled him at that time into believing that it was not possible to install a sub-meter. The city did not inform plaintiff of his right to appeal that decision, and plaintiff did not pursue the subject.

In 2001, believing that the law had changed, plaintiff again raised the issue of sewer usage with the city. On that occasion, plaintiff received permission to install a sub-meter and did so. He then requested a refund of alleged sewer overpayments dating back to 1994. The city refused, and plaintiff appealed the refusal to Marriott, the head of the Bureau. Over plaintiff's objections, Mariott limited the hearing on plaintiff's appeal to the issue of whether the city had correctly calculated the sewer bills. Mariott refused to consider either the issue of a refund dating to 1994 or plaintiff's constitutional and common-law challenges to the city's refusal to permit plaintiff to install a sub-meter at that time. On January 13, 2003, Marriott denied plaintiff's appeal, finding instead that plaintiff owed additional amounts to the city. When plaintiff attempted to appeal, the city's Code Hearing Officer denied that he had jurisdiction over the matter.

Plaintiff filed a petition for a writ of review within 60 days of Marriott's decision. In his complaint, he also included constitutional, conversion, and contract claims,[2] and a claim under 42 USC section 1983. The city removed the case to federal court based on the section 1983 claim. On November 21, 2003, that court dismissed one count of the section 1983 claim, held the other two counts in abeyance, and dismissed the state law claims without prejudice. It also dismissed the claim against Marriott in his official capacity with prejudice but permitted plaintiff to sue Marriott in his personal capacity. In dismissing the claims, the federal court noted that the version of ORS 12.220 in effect when plaintiff filed the complaint would permit him to refile the case within a year from

---

[2] We describe the details of the claims as part of our discussion of whether the writ of review was plaintiff's exclusive remedy.

the dismissal.[3] The federal court did not explain why it dismissed the claims rather than remanding them to the state court.

Plaintiff filed this action on January 14, 2004. The claims in his complaint are identical to the state claims that the federal court dismissed except that, in accordance with that court's ruling, plaintiff asserts claims against Marriott in his personal rather than official capacity. Although the complaint included a petition for a writ of review, plaintiff did not file the undertaking that ORS 34.050 requires, and the trial court did not issue the writ. In April 2004, defendants filed a motion to dismiss all of plaintiff's claims under ORCP 21 A(8) for failure to state ultimate facts sufficient to state a claim and to dismiss the constitutional, conversion, and contract claims under ORCP 21 A(9) as untimely.[4] In their argument supporting their motion to dismiss, defendants pointed out plaintiff's procedural failures and argued that, as a result, there was nothing for the court to review.

"In this case, plaintiff has failed to obtain the necessary writ and has not provided any evidence of a bond to defendants as required by ORS 34.050, 34.060, 34.080. These are essential jurisdictional requirements without which there is simply no action for the court to review. *Shevchynski v. City of Eugene*, 157 Or App 355, 360-61, 970 P2d 237 (1998)."

Defendants also challenged the legal sufficiency of the petition. They did not argue that the court should dismiss the case because plaintiff had failed to serve the writ that he had not obtained.

In response to defendants' motion, plaintiff defended the sufficiency of his pleading, but he did not refer to his failure to file an undertaking or to have the court issue the writ.

---

[3] Plaintiff filed this case within a year after the federal court's dismissal of the original case. Defendants appear to agree with the federal court that, under ORS 12.220, plaintiff's petition for a writ of review and his other claims were timely if the original claims were timely. We also agree with that interpretation of the statute.

[4] At the same time that they filed the motion to dismiss, defendants filed a return of writ in which they submitted the entire record as if the court had issued the writ.

On June 17, 2004, the trial court granted the motion to dismiss the petition for a writ of review on the ground that plaintiff had failed to serve the writ on the city. It described service as a jurisdictional requirement:

> "The Writ of Review under ORS 34.010 is a special statutory proceeding, providing for judicial review of quasi-judicial functions. Jurisdictional requirements are to be strictly construed. Car Wash concedes that it failed to serve City with a certified copy of the writ as required by ORS 34.080. Thus, the court does not have jurisdiction and the motion to dismiss is granted as to this claim."

The court did not explain how plaintiff could have served the writ on the city when the court had not yet issued it. At the same time, the court denied the city's motion to dismiss plaintiff's remaining claims.

On July 1, 2004, the city filed a motion for summary judgment on the constitutional, conversion, and contract claims. It argued, among other things, that the writ of review was the exclusive method for reviewing the city's actions and that that method of review therefore preempted those claims. The trial court agreed that the writ of review was exclusive and granted the motion for summary judgment. It then entered a general judgment dismissing the entire case, and plaintiff appealed. We first consider the issues concerning the dismissal of the writ of review and then discuss the remaining claims.

The difficulty with the trial court's rationale for granting the motion to dismiss the petition for a writ of review is that the court assumed that something had happened that, in fact, had not happened—that there was a writ that plaintiff could have served. Because the trial court never issued the writ, plaintiff never had the ability to serve it on the city or on anyone else. The court raised that issue *sua sponte*; neither plaintiff nor defendants had notice that it would be an issue. Defendants did not rely on lack of service to support their motions to dismiss. Although defendants mentioned the requirement of serving the writ in their background discussion, in their arguments they emphasized that plaintiff had not obtained a writ. The specific procedural grounds on which defendants sought dismissal were that

plaintiff had not filed the necessary undertaking and that he had not obtained the writ.

The trial court's reliance on a ground of which no party had notice raises the question of how we review the trial court's decision. In their opening brief, appellants stated that we should review the dismissal of their petition for review for error apparent on the face of the record. They then argued that their substantive arguments on appeal—that failure to serve the writ is not jurisdictional and that defendants waived any defect by not raising the issue themselves—satisfied that standard of review. After appellants filed their opening brief, but before they filed their reply brief, we decided *Wetherell v. Douglas County*, 204 Or App 732, 132 P3d 41 (2006), *aff'd in part, rev'd in part and rem'd*, 342 Or 666, 160 P3d 614 (2007). In *Wetherell*, the Land Use Board of Appeals (LUBA) based its decision on an administrative rule that no party had mentioned during the course of the proceeding. As a result, the party that lost before LUBA had not previously discussed the proper construction of the rule or contended that the rule was invalid. We held that the losing party, nevertheless, could raise those issues on a petition for review before us. That, we held, was the necessary corollary of LUBA's obligation to notice and apply statutes that the parties may have failed to mention. "[T]o the extent that an adjudicative entity can (or must) invoke new authority in the first instance on review or appeal, the parties should be entitled to dispute the applicability of that newly noticed authority." *Id.* at 739.

In their reply brief, appellants argue that the underlying principle in *Wetherell* also should apply to this case. We agree. The trial court invoked a new principle in deciding the motion, and the parties should be entitled to dispute the applicability of that principle on appeal. Because plaintiff did not have notice that service would be an issue, he had no opportunity to preserve any error with regard to that issue. Requiring preservation in those circumstances would be inconsistent with the reasons for the preservation rule.

> "The purpose of the preservation rule is the practical one of requiring a [party] to provide an explanation of [its] position 'specific enough to ensure that the [trial] court can

identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.' *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000)."

*State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004). It would not serve that purpose to require plaintiff to make an argument before the trial court that he had no reason to believe he needed to make. In these circumstances, appellants are entitled to challenge the basis for the trial court's decision without having to show that plaintiff preserved the same arguments below or that the court's error was plain on the face of the record.[5] We turn to the merits of appellants' argument.

ORS 34.020 provides that "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise." A writ of review is, thus, the sole method for a court to review certain decisions or determinations of a local government. The party seeking review must file a petition for a writ of review within 60 days from the date of the challenged decision, ORS 34.030, and thereafter must file an undertaking for costs in the sum of $100. ORS 34.050. Once the petitioner has filed both a legally adequate petition and the undertaking, the court will issue the writ, directing it to the body whose decision the court is to review. ORS 34.040; ORS 34.060; ORS 34.080.

We have described the process involved in obtaining and considering a writ of review as *sui generis*. Although the statutes contain a number of procedural requirements, the only jurisdictional requirement is that the plaintiff file the petition within 60 days from the date of the challenged decision. Jurisdiction

"does not depend on when the petition is allowed or when the writ is issued or when it is served. Once the court acquires jurisdiction by the timely filing of the petition for the writ, any defects in the petition may be cured by amendment, even after the 60 days have elapsed, without the court's losing jurisdiction."

---

[5] Because of this conclusion we do not need to decide whether the trial court's error was plain on the face of the record.

*Shipp v. Multnomah County*, 133 Or App 583, 589, 891 P2d 1345 (1995).[6]

In *Shevchynski*, 157 Or App at 360, the plaintiffs filed a petition for a writ of review to challenge the city's decision finding a violation of the city's land use code. Although the plaintiffs thereafter filed several amended petitions, the trial court never actually issued the writ. Despite that failure, the trial court decided the merits of the case, first ordering a new hearing and then setting aside the penalty that the city had imposed. *Id.* at 358-60. On the city's appeal, we held that the writ of review statutes clearly contemplate that the court must first issue the writ before it may review a local government's proceeding. Thus, the trial court was without authority to order a new hearing or to set aside the city's decision because it had not issued the writ. Despite the time that had passed, we did not dismiss the case. Instead, we remanded for the court to issue a writ of review if the petitioners had met the statutory requirements for doing so. *Id.* at 360-61.

In *Magar v. City of Portland*, 179 Or App 104, 39 P3d 234 (2002), the plaintiff filed a petition for a writ of review, the court issued the writ, and the city filed a return. Two months later the plaintiff filed his undertaking. The city then moved to dismiss the petition on the ground that the court had lacked jurisdiction to issue the writ. The court concluded that the plaintiff had waited too long to cure his failure to file an undertaking and that that failure was a jurisdictional defect. It therefore dismissed the petition. *Id.* at 106-07. On appeal, we held that the failure to file an undertaking was not a jurisdictional defect. Although it deprived the court of authority to proceed, it did not deprive it of jurisdiction over the city's actions. *Id.* at 107-08. We explained that "[t]he circuit court here had subject matter jurisdiction because

---

[6] Before *Shipp*, we had suggested that failing to serve the writ is jurisdictional. *See Thompson v. Columbia County*, 29 Or App 813, 564 P2d 1376 (1977); *N.W. Env. Def. Center v. City Council Comm'rs*, 20 Or App 234, 531 P2d 284 (1975). However, as we later explained, we used "jurisdiction" in those cases to refer to the trial court's authority to review the challenged decision, not to its jurisdiction over the petition for a writ. *Shevchynski*, 157 Or App at 360. Thus, lack of service prevents the court from proceeding further until service occurs; it does not deprive the court of jurisdiction over the petition for a writ of review or over the challenged decision.

plaintiff satisfied the conditions in ORS 34.030 by filing his petition in the appropriate court within 60 days from the date of the decision sought to [be] reviewed." *Id.* at 109. We observed that the statutes do not require the plaintiff to file an undertaking within any finite time after filing the petition for a writ of review. What the statutes do require is that the plaintiff file the undertaking before the court may issue the writ. For those reasons, we concluded that the trial court should have quashed the writ as improvidently issued. That did not require dismissal of the case, however. Rather, we vacated the court's judgment and remanded with instructions to quash the first writ and to issue a new writ because the plaintiff had now filed the undertaking. *Id.* at 110-11.

■ Those decisions make it clear that the trial court erred in dismissing the petition for a writ of review in this case on the ground that it did. Plaintiff filed his petition within the statutorily prescribed time after Marriott's decision, and the court therefore had jurisdiction over the petition. Plaintiff did not file an undertaking, and the court did not issue the writ. Thus, there was no writ for plaintiff to serve. Even if plaintiff had filed an undertaking and the court had issued the writ, any failure to serve it would not have been a jurisdictional defect. The foregoing decisions also dispose of the procedural grounds that defendants did raise in support of their motion to dismiss the petition and which they renew on appeal. Plaintiff's failure to file an undertaking and to procure the writ do not support dismissing the petition. Although those facts mean that the court has no authority to proceed further on the petition, the petition remains pending. If appellants file an undertaking on remand, the court will have jurisdiction to issue the writ and to review the challenged action.[7]

Defendants also argued to the trial court and on appeal that the petition for a writ of review was untimely

---

[7] We do not suggest that there could be no other basis for dismissing the petition at some point after remand should, for example, appellants fail to diligently prosecute the matter. *See* ORCP 54 B(3); *see also Alt v. City of Salem*, 306 Or 80, 83, 756 P2d 637 (1988) (the ORCPs, as a general rule, apply to writ of review proceedings, unless they conflict with the writ of review statutes or are, as a practical matter, inapplicable in the context of such proceedings). We conclude only that the trial court erred in dismissing the petition on jurisdictional grounds.

because the city took some of the actions that plaintiff challenges in 1994, which was far more than 60 days before plaintiff filed the petition. The difficulty with that argument is that plaintiff specifically sought review of a decision that the city made in 2004, less than 60 days before he filed the petition. One of the grounds for his petition is that the city should have considered the effect of its earlier actions on the later proceeding. Whether plaintiff was correct goes to the merits of the review, something that the court cannot consider until it issues the writ. Defendants' remaining argument, that the city's decision was correct in substance, is also premature. The trial court erred in dismissing plaintiff's petition for a writ of review for lack of jurisdiction.

We turn to plaintiff's three remaining claims, which the trial court dismissed on the ground that the writ of review was plaintiff's exclusive method for challenging the city's decision. That court based its decision on ORS 34.020, which, as we previously noted, provides that a party may seek review of a local government decision by a writ of review *"and not otherwise."* (Emphasis added.) ORS 34.040(1) provides:

> "The writ shall be allowed in all cases in which a substantial interest of a plaintiff has been injured and an inferior court including an officer or tribunal other than an agency as defined in ORS 183.310(1) in the exercise of judicial or quasi-judicial functions appears to have:
>
> "(a)   Exceeded its jurisdiction;
>
> "(b)   Failed to follow the procedure applicable to the matter before it;
>
> "(c)   Made a finding or order not supported by substantial evidence in the whole record;
>
> "(d)   Improperly construed the applicable law; or
>
> "(e)   Rendered a decision that is unconstitutional."

■■   The text of the writ of review statutes and the function of the writ provide evidence of the legislature's intent with respect to the extent of the exclusivity of the remedy or the related effect of failure to obtain timely review. The first clue comes from the statutes that describe decisions that are subject to the writ of review process. ORS 34.020 requires a "process or proceeding before or by any inferior court, officer

or tribunal" that results in a "decision or determination." ORS 34.040(1) elaborates that that process must result in the "exercise of judicial or quasi-judicial functions." The hallmark of a quasi-judicial decisional process is the application of pre-existing criteria to concrete facts. *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 602-03, 601 P2d 769 (1979). The remedy is available only to a "party" to the process or proceeding. ORS 34.020. Thus, the type of decision that is subject to review under ORS 34.010 to 34.102 is a decision that applies standards to particular facts in ways that cause injury to "a substantial interest" of the plaintiff. ORS 34.040(1). The preclusive effect of a filed or forgone writ of review proceeding thus depends, in part, on whether the related claim involves the same facts.

The second clue to legislative intent lies in the nature of judicial oversight in a writ of review proceeding. The review is appellate and is based on the record returned by the inferior tribunal. ORS 34.060. The bases for review are tied to the types of adjudicatory decisions that are subject to review. ORS 34.040(1). When a qualifying decision is appealed, ORS 34.020 states that it is "reviewed for errors, as provided in ORS 34.010 to 34.100, and not otherwise."[8] ORS 34.020 and ORS 34.102(2) preclude certain "review[ ] for errors" of a decision subject to review by writ in any other judicial proceeding. Those statutes set out the only prohibitions on collateral claims in the writ of review statutes. The statutes do not bar a collateral claim unless the adjudication of such a claim necessarily reviews the inferior agency's decision for errors of the types cognizable in a writ of review proceeding.

The foregoing principles were applied in *Ettner v. City of Medford*, 155 Or App 435, 963 P2d 149, *rev den*, 328 Or 40 (1998). In that case, the plaintiff appealed after the trial court granted summary judgment on her statutory employment discrimination claims. The plaintiff had been discharged from her employment by the defendant city. The

---

[8] When the decision-maker is the governing body of a municipal corporation, ORS 34.102(2) reiterates that quasi-judicial business decisions "shall be reviewed only as provided in ORS 34.010 to 34.100, and not otherwise." In the present case, the decision-maker was not the city's governing body.

trial court determined that the plaintiff's action was precluded because the exclusive means to challenge the alleged unlawful discharge was by writ of review. We reversed, reasoning that the plaintiff's complaint did not challenge the decision to discharge her on any of the grounds enumerated in ORS 34.040(1)(a) to (e). Rather, she alleged statutory violations that were actionable under ORS chapter 659. We held that, because none of the statutory "triggers" in ORS 34.040(1) was present, the writ of review procedure was not available as a means to challenge the discharge decision and, therefore, the exclusivity provision of ORS 34.102(2) was inapplicable. *Ettner*, 155 Or App at 438-39.

The reasoning in *Ettner* is consistent with the Supreme Court's decision in *Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992). In *Shockey*, the plaintiff brought a tort action for common-law wrongful discharge. The defendants argued that the plaintiff's exclusive judicial remedy for challenging his discharge was by writ of review after he had pursued his remedies under the Public Employees Collective Bargaining Act. Indeed, the Civil Service Board found in the plaintiff's favor, reinstated him with back pay, and restored his seniority rights and benefits. *Id.* at 422. Nonetheless, the Supreme Court held that the circuit court had subject matter jurisdiction over the common-law discharge claim despite the exclusivity language of ORS 34.102(2). The court reasoned that the plaintiff's success in his administrative claim made the adjudication of the writ of review unnecessary and unavailable. *Id.*

■ Our opinion in *Cloyd v. Lebanon School District 16C*, 161 Or App 572, 985 P2d 232 (1999), is consistent with *Shockey* and *Ettner*. In *Cloyd*, the plaintiff's employment was terminated by the school district, and the petitioner brought claims in circuit court for a writ of review and for breach of contract. The trial court ruled that the writ of review claim was untimely and that it furnished her exclusive remedy. On appeal, we reversed. After reviewing decisional law concerning breach of an employment contract, we distilled the following rule:

> "Where an action seeks to enforce rights that arise from the
> terms of a contract, rather than from an extra-contractual

source, such as a statute or an employer rule or handbook, the action may be brought in contract, *even though it might otherwise also be able to be brought in a writ of review proceeding."*

161 Or App at 578 (emphasis added). We further explained that "[t]he writ of review statutes do not * * * serve to abolish established common-law remedies[,]" citing *Shockey* for the proposition that the "availability of writ of review does not supplant action for common-law tort of wrongful discharge." *Cloyd*, 161 Or App at 578 (citing *Shockey*, 313 Or at 421-22). Ultimately, we concluded that the plaintiff could pursue her breach of contract claim because it arose out of an alleged contract with the district that provided additional rights beyond those granted by a statutory source or an employer rule governing her employment status. *Cloyd*, 161 Or App at 580-81.

In a footnote in *Cloyd*, we explained that the "basis for [the above rule] may be less clear than the rule itself." *Id.* at 579 n 5. After citing *Ettner*, we explained that it may be that a substantive standard or procedural remedy available *only* pursuant to a contract cannot be said to call for the exercise of "judicial or quasi-judicial" authority, as those terms are used in the writ of review statutes. *Cloyd*, 161 Or App at 579 n 5. Or, alternatively, it may be that the writ of review statutes do not evince a legislative intent to supplant common-law tort and contract remedies. However, we concluded that it was not necessary on the facts in *Cloyd* to identify the precise basis for the rule. *Id.*

Subsequently, in *Pangle v. Bend-Lapine School District*, 169 Or App 376, 10 P3d 275 (2000), *rev den*, 332 Or 558 (2001), we applied the principles set out in *Shockey* and *Ettner* in the context of a claim for declaratory relief. In *Pangle*, the defendant school district expelled the plaintiffs' son from school for alleged misconduct. The plaintiffs, acting as their son's guardians *ad litem*, filed a declaratory judgment action asserting that the district's action violated the free speech protections of both the state and federal constitutions. *Id.* at 379-81. They later filed a petition for a writ of review, which the trial court dismissed as untimely. *Id.* at 383. After agreeing that the writ of review was untimely, we

considered the declaratory judgment action as it pertained to the state claims. The student had received a quasi-judicial hearing that was reviewable by a timely writ of review. No other specific statutory or common-law remedy was available to him. The plaintiffs sought substantially the same relief in the writ of review and declaratory judgment actions. In that context, to permit the declaratory judgment to proceed would have resulted in *de novo* review of the hearing officer's decision, something that would be directly contrary to the more limited review that was available under a writ of review. We therefore held that the writ of review was the plaintiffs' exclusive remedy and that the trial court did not have jurisdiction of the state law claims in the declaratory judgment action.[9] *Id*. at 383-85.

To summarize: For a final inferior tribunal decision to preclude a related claim under ORS 34.020 or ORS 34.102, the following circumstances must exist. First, the decision must be subject to the writ of review process, that is, it must be an adjudicatory proceeding to which the claimant is a party, and it must adjudicate the effect of facts common to the related claim.

Second, the related claim must depend on whether the decision was correctly made under the review standards of ORS 34.040(1), as opposed to being erroneous under other criteria. Put another way, an adjudication of the claim must necessarily involve a "review[ ] for errors" under ORS 34.020. Even if the writ of review is available, we must determine whether the rights to be enforced have as their source a statute, administrative regulation, or other rule that governs the activities of the inferior court, officer or tribunal, or whether the rights to be enforced are derived from the common law or another controlling source of law that is distinct from the applicable law at issue under ORS 34.040(1)(d).

Examining plaintiff's remaining claims in light of those principles, we conclude that it is premature at this stage of the proceedings to determine whether those claims

---

[9] Because state standards of jurisdiction cannot apply to claims under 42 USC section 1983 if they would preclude a federal claim that federal standards would not preclude, we decided those claims on their merits. *Pangle*, 169 Or App at 385-86.

will be precluded by the adjudication of the writ of review claim. In his condemnation claim, plaintiff alleged that the city denied his request to install a sub-meter; billed him for sewer services greater than actual use, thus requiring him to pay amounts that were greater than the value of the services that he had received; and refused to consider all pertinent issues in the hearing. By so doing, plaintiff alleged, the city took his property without due process of law. The basis of plaintiff's conversion claim is that the city exercised dominion over plaintiff's money by compelling payment based on arbitrary estimates of his use of the sewer rather than on his actual use. In his rescission claim, plaintiff sought to rescind his contract to use the city's sewer services and to recover the amount that he had paid for those services because of the city's alleged fraud in inducing him to enter into the contract by telling him that he could not install a sub-meter. Plaintiff seeks money damages or restitution on each claim in the sum of $275,000. Each of those claims primarily focused on defendants' allegedly improper refusal in 1994 to permit the installation of a sub-meter that would permit the accurate measurement of the actual level of plaintiff's sewer usage, and its billing plaintiff between 1994 and 2001 for sewer services that exceeded plaintiff's actual usage. The fraud claim focused on an alleged fact that occurred in 1994 when defendants purportedly told plaintiff that the use of a sub-meter to measure actual sewer usage was not "possible." Thus, under plaintiff's fraud theory, defendants could be liable for restitution arising from fraud in the inducement even if the director properly interpreted the city's ordinances concerning sewer charges that were imposed in 1994 and in the following years.

Here, the condemnation, conversion, and fraud claims seek to enforce rights that will not necessarily be adjudicated on review of the city's 2003 decision pursuant to ORS 34.040. The rights that plaintiff sought to enforce could be grounded in different applicable law from a statute, administrative regulation, or other rule that governs and was construed by the city in its 2003 decision. The initial adjudication of the writ of review claim thus will not preclude or subsume plaintiff's other claims, except to the extent that the adjudication necessarily determines factual or legal issues in

ways that undercut or subsume those claims. Accordingly, we conclude that the trial court erred in granting defendants' motion for summary judgment on plaintiff's condemnation and common-law claims.

Reversed and remanded.