Argued and submitted January 9, judgment dismissing first and second claims vacated for lack of jurisdiction and remanded for entry of judgment dismissing those claims for lack of jurisdiction; otherwise affirmed July 11, 2007

Frank BUTCHART,
*Plaintiff-Appellant,*

*v.*

BAKER COUNTY,
a political subdivision of the State of Oregon,
*Defendant-Respondent.*

Baker County Circuit Court
03827; A126840

166 P3d 537

Ridgway K. Foley, Jr., argued the cause for appellant. With him on the briefs was Greene & Markley, P.C.

Jeffrey M. Batchelor argued the cause for respondent. With him on the brief were Markowitz, Herbold, Glade & Mehlhaf, P.C., and Dan Van Thiel.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

### HASELTON, P. J.

Plaintiff appeals from a judgment, following a trial to the court, rejecting his claims for declaratory and injunctive relief and inverse condemnation, all arising from a dispute regarding the status of a road crossing a portion of his property. For the reasons set forth below, we conclude that, under ORS 34.102(2),[1] the trial court lacked subject matter jurisdiction over plaintiff's claims for declaratory and injunctive relief; consequently, we remand to the trial court to vacate the judgment with respect to those two claims and to dismiss those claims for lack of jurisdiction. We further determine that the trial court had jurisdiction over the inverse condemnation claim and affirm the denial of relief on that claim.

Before addressing the jurisdictional questions, which predominate, we summarize the circumstances of the dispute and the facts pertinent to our analysis of jurisdiction. Plaintiff owns property in rural Baker County. The central substantive dispute in this case is whether the Connor Creek Road, which crosses a portion of plaintiff's property, is a so-called "RS 2477 road" and, thus, is a public road, and not a private road.

In 1866, Congress passed a law, commonly referred to as "RS 2477," that granted "the right of way for the construction of highways over public lands, not reserved for public uses." Act of July 26, 1866, ch 262, § 8, 14 Stat 251, 253, *codified at* 43 USC § 932, *repealed by* Federal Land Policy Management Act of 1976, Pub L No 94-579 § 706(a), 90 Stat 2743 (1976).[2] Plaintiff owns several parcels of land that were

---

[1] ORS 34.102(2) provides, in part, that, if a writ of review is available, then (with exceptions not pertinent here)

"the decisions of the governing body of a municipal corporation acting in a * * * quasi-judicial capacity and made in the transaction of municipal corporation business shall be reviewed *only* as provided in ORS 34.010 to 34.100, *and not otherwise.*"

(Emphasis added.)

[2] Although the 1976 law repealed the 1866 law, the 1976 law specified that any valid RS 2477 rights-of-way "existing on the date of approval of this Act" would continue in effect. Pub L No 94-579 § 701(a), 90 Stat 2743, 2786 (1976). Thus, although the 1866 law has been repealed, it still is used to determine the status of roads that were in existence prior to 1976, as was the road at issue in this case.

granted to his predecessors in interest pursuant to a federal mining patent in 1883. It is undisputed that a significant amount of mining occurred on the property in the mid-to-late nineteenth century and a small mining community existed there. However, the parties vehemently dispute whether the Connor Creek Road, which today crosses plaintiff's property, existed "over public lands" before the mining patent was granted to plaintiff's predecessor in interest. That is, if the road existed prior to the mining patent, it is an "RS 2477 road," and the road does not belong to plaintiff.

In April 2000, the Baker County Board of Commissioners (the board) passed a resolution establishing a countywide policy regarding RS 2477 rights-of-way, declaring that Baker County had accepted the grant offered under RS 2477 by the federal government and that it "is the owner of, or has a perpetual easement in favor of the public over, highway rights-of-way accepted pursuant to grant offered under RS 2477." The resolution identified certain RS 2477 rights-of-way but went on to note that additional RS 2477 rights-of-way would be recognized "as evidence establishing the perfection of any RS 2477 right of way becomes available." Baker County Resolution 2000-1026.

After disputes arose about plaintiff's tenant excluding the public from Connor Creek Road, the board issued a notice of public hearing "to determine whether to recognize Connor Creek Road as an RS 2477 right-of-way." That notice identified the date and place of the hearing, and solicited public input as well as documentation about the historic use of the road.

The public hearing was held on February 20, 2002. At that hearing, the county roadmaster told the board that mail had been delivered on horseback to the area of Connor Creek as early as 1862, that Connor Creek Road was in place in 1877, and that a map showed a road in the same general vicinity in 1882. A field manager for the Bureau of Land Management spoke as well, stating that the road had been in use from 1863.[3] The record of that hearing does not indicate

---

[3] Connor Creek Road crosses Bureau of Land Management land as well as plaintiff's land.

whether or not the documentation to which those witnesses referred was provided to the board.

Various interested community members—including plaintiff and his tenant—also spoke at the February 20, 2002, public meeting. Plaintiff told the board that the current road was not in the same area as roads shown on the early maps. Another witness stated that he had used the road while growing up and that the current road might not be where the old road had been located. The president of the Eastern Oregon Sportsman's Association indicated that she had researched the question and believed that Connor Creek Road followed an Indian trail route that later became a stage-coach route. Most of the public comments, however, concerned incidents involving the tenant's exclusion of the public from the road.

At the end of the public hearing, the board voted to recognize Connor Creek Road as an RS 2477 road. The board convened again on March 6, 2002, and passed a resolution formally amending the April 2000 resolution, to add Connor Creek Road to the list of recognized RS 2477 rights-of-way.

In January 2004, plaintiff brought this action, alleging claims against the county for declaratory and injunctive relief and for inverse condemnation. In his first claim, for declaratory relief, plaintiff alleged that the portion of Connor Creek Road that crosses his property was built by his predecessors in interest after the issuance of the mining patent—and that there has never been an RS 2477 road legally located on his land. Consequently, plaintiff sought declarations that (1) the portion of Connor Creek Road located on his property is not an RS 2477 road because it was not located on the property at the time (1883) that his predecessors in interest acquired the property by virtue of the mining patent, (2) plaintiff can control access to the road, and (3) the actions taken by the board on February 20, 2002, and March 6, 2002, to declare the road to be an RS 2477 road, are invalid.

In his second claim for relief, plaintiff sought an injunction to prevent county employees from tampering with gates across Connor Creek Road and related signage that plaintiff intended to post to exclude the public from Connor

Creek Road, should he prevail on the declaratory judgment claim.[4]

In his third claim, for inverse condemnation, plaintiff alleged that the actions taken by the board in 2002 effected a taking of his property for public purposes without payment of just compensation, in violation of Article I, section 18, of the Oregon Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. On that claim, plaintiff sought damages of $150,000.

In its answer, defendant asserted that the disputed road was an RS 2477 right-of-way. Defendant also brought a counterclaim for injunctive relief.[5]

The case was tried to the court, which issued a memorandum opinion, rendering extensive factual findings. Based on those findings, the court concluded that, because Connor Creek Road had been "used by the public for mining, timber and grazing purposes and predated the patented [mining] claims," the county properly determined RS 2477 to be a county road. Consequently, the court denied plaintiff relief on all claims.

This appeal ensued. After briefing and oral argument, we *sua sponte* raised the jurisdictional question whether, under the principles pertaining to "writ of review exclusivity," ORS 34.102(2), the trial court lacked subject matter jurisdiction to adjudicate some or all of plaintiff's claims.[6] In particular, we directed the parties to submit additional memoranda addressing whether plaintiff was jurisdictionally precluded from obtaining relief of any sort because he did not seek a writ of review, pursuant to ORS 34.010 to 34.100, of the board's 2002 decision and determination of the

---

[4] In the jurisdictional analysis that follows, we understand, and treat, that claim as being functionally indistinct from plaintiff's declaratory judgment claim, in that it is predicated on the same allegations and seeks supplemental relief available under the Uniform Declaratory Judgments Act, ORS 28.010 to 28.160.

[5] The substance of that counterclaim is immaterial. The trial court rejected the counterclaim, and that disposition is not at issue on appeal.

[6] *See Hood River County v. Stevenson*, 177 Or App 78, 81, 33 P3d 325 (2001) ("A jurisdictional question need not be preserved by a party, much less raised at a specific point in a proceeding, for a court to consider it. Courts have an obligation to consider jurisdictional issues *sua sponte*.").

status of Connor Creek Road. *See generally State ex rel City of Powers v. Coos County Airport*, 201 Or App 222, 230, 119 P3d 225 (2005), *rev den*, 341 Or 197 (2006) ("[W]hen the writ of review is available, it is the exclusive remedy[.]").

Predictably, plaintiff contended that none of the claims is barred by the exclusivity provision of ORS 34.102(2). Conversely—and equally predictably—defendant asserted that all claims are barred. As explained below, we conclude that the correct resolution lies between those absolute positions: Although the declaratory judgment and related injunctive relief claims are both barred, the inverse condemnation claim is not.

ORS 34.040(1) provides that a court may issue a writ of review in cases in which a plaintiff has been injured by an entity such as a county in its exercise of "quasi-judicial functions." If a writ of review is available, then (with exceptions not pertinent here)

> "the decisions of the governing body of a municipal corporation acting in a * * * quasi-judicial capacity and made in the transaction of municipal corporation business shall be reviewed only as provided in ORS 34.010 to 34.100, and not otherwise."

ORS 34.102(2).

*Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979), is the keystone of the jurisdictional inquiry. In *Strawberry Hill 4 Wheelers*, the defendant county made a decision to vacate a public road. The plaintiffs, who had appeared at a public hearing on the matter and presented testimony in opposition to vacating the road, sought a writ of review from the county's adverse decision. *Id.* at 593. The trial court concluded that the county's decision was not "quasi-judicial" and, thus, writ of review was not available.

The Supreme Court reversed, holding that the county's decision was "quasi-judicial" in character. The court began with a lengthy historical overview of writ of review, explaining that, while the older case law was confusing and somewhat contradictory, writ of review in Oregon traditionally has applied to review of "county road decisions." *Id.* at

599-601. The court then explored and clarified the distinction between reviewable "quasi-judicial" actions taken by a county and "legislative" actions that are not subject to writ of review—and, in so doing, identified several distinguishing features or hallmarks. *Id.* at 602-03. One feature of a "quasi-judicial" process was whether "the process, once begun, calls for reaching a decision." *Id.* at 604. The court emphasized that, even where the governing criteria for such a decision leave room for policy discretion, the decision may be "quasi-judicial" if it involves "a closely circumscribed factual situation or a relatively small number of persons," as well as the application of "preexisting criteria." *Id.* at 603.

The court in *Strawberry Hill 4 Wheelers* then turned to the facts of that case, beginning with the statutory scheme that governed proceedings to vacate roads. The process could begin either by a petition or on the county's own motion, after which the county roadmaster could be asked to render an opinion, and a public hearing would be held. Regarding whether "the process, once begun, calls for reaching a decision," *id.* at 604, the court noted that the statutory scheme did "appear[ ] to contemplate" that the county would eventually reach a decision whether to act or not, *id.* at 606. As to whether the decision called for the application of preexisting criteria, the court found that the statutory scheme "sufficiently channels discretion by factfinding procedures and broadly stated criteria[.]" *Id.* The court did not explicitly state that the decision was made in a "closely circumscribed factual situation," *id.* at 603—but that conclusion is implicit given the court's recitation of the facts and the court's ultimate determination that the county's determination was subject to writ of review.

In *Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 495, 91 P3d 748 (2004), we described our understanding of the inquiry for determining whether a county's action is "quasi-judicial" as follows:

"First, does 'the process, once begun, [call] for reaching a decision,' with that decision being confined by preexisting criteria rather than a wide discretionary choice of action or inaction? *Strawberry Hill 4 Wheelers*, 287 Or at 604. Second, to what extent is the decision-maker 'bound to apply preexisting criteria to concrete facts'? *Id.* at 602-03. Third,

to what extent is the decision 'directed at a closely circumscribed factual situation or a relatively small number of persons'? *Id.* at 603.

"Those three general criteria do not, however, describe a bright-line test. As we noted in *Estate of Gold v. City of Portland*, 87 Or App 45, 51, 740 P2d 812, *rev den*, 304 Or 405 (1987), *Strawberry Hill 4 Wheelers* 'contemplates a balancing of the various factors which militate for or against a quasi-judicial characterization and does not create [an] "all or nothing" test[.]' (Citation omitted.) In particular, we noted that the criteria are applied in light of the reasons for their existence—*viz.*, 'the assurance of correct factual decisions' and 'the assurance of "fair attention to individuals particularly affected."' *Estate of Gold*, 87 Or App at 51 (quoting *Strawberry Hill 4 Wheelers*, 287 Or at 604)."

(Brackets in original.)

In *Hood River Valley*, the defendant county's board of commissioners made a decision to enter into a land exchange agreement with a private developer. 193 Or App at 487. The petitioners opposed the land exchange, arguing that it did not comport with various statutes pertaining to such exchanges. *Id.* at 488. The trial court dismissed petitioner's petition for a writ of review, concluding that the decision was not an exercise of a "quasi-judicial function[ ]." *Id.* at 493.

We reversed that dismissal. Regarding the first criterion, we stated that, although the county was not required to entertain the possibility of a land exchange, once it entered into a preliminary agreement to do so, "it was ultimately bound to reach a decision as to whether the contractual and statutory conditions for the exchange had been satisfied[.]" *Id.* at 497. We noted that statutory criteria governed such land exchanges and required the county to apply those " 'pre-existing criteria to concrete facts.' " *Id.* (quoting *Strawberry Hill 4 Wheelers*, 287 Or at 603). Finally, we agreed with the petitioners that the decision involved "a closely circumscribed factual situation" because it "concerns the exchange of certain specified pieces of property, and nothing else." *Hood River Valley*, 193 Or App at 499.

■ We turn to the application of the inquiry from *Strawberry Hill 4 Wheelers*, as explicated in *Hood River*

*Valley*, to this dispute. We begin by clarifying and emphasizing the proper referent for our inquiry. Plaintiff contends that writ of review is not his exclusive remedy because the county's *April 2000* resolution, which established its policy with regard to RS 2477 roads, was essentially legislative rather than quasi-judicial. Regardless of whether plaintiff is correct in that assertion, it is beside the point. To be sure, the county's April 2000 resolution is pertinent to our legal analysis—but *that* is not the county action that plaintiff seeks to overturn in this proceeding. Rather, plaintiff's claims here are ultimately grounded in a challenge to the correctness of the county's 2002 decision that Connor Creek Road is an RS 2477 road. *That* is the proper focus of the jurisdictional analysis.

Consistently with *Strawberry Hill 4 Wheelers*, we ask first whether the process that the county engaged in in 2002 "once begun, call[ed] for reaching a decision." 287 Or at 604. The second, somewhat interrelated, question concerns whether such a decision is a discretionary one, rather than one that is to be determined based on preexisting criteria. As noted, in April 2000, before the dispute concerning the status of Connor Creek Road arose, the board adopted a resolution declaring that "it is the policy of the County to ensure that all rights-of-way accepted pursuant to the grant offered under R.S. 2477 be retained in perpetuity for the use and benefit of the public." Baker County Resolution 2000-1026. As also noted above, that resolution contemplated and anticipated a future process by which the board would determine whether particular roads were, in fact, RS 2477 roads and, thus, subject to the policy established in the April 2000 resolution.

Given the mandate of the March 2000 resolution to recognize and retain in perpetuity all RS 2477 rights-of-way "as evidence establishing the perfection of any RS 2477 right-of-way becomes available," once the board initiated the February 2002 proceeding, it was obligated to make a discrete and particularized decision: As a factual matter, applying the criteria set forth in Baker County Resolution 2000-1026, did Connor Creek Road qualify as an RS 2477 road? If the road did so qualify, then it must be "retained in perpetuity for the use and benefit of the public." In sum, the county, after initiating the process of determining whether Connor

Creek Road was an RS 2477 road—a "process, once begun, [that] call[ed] for reaching a decision," *Strawberry Hill 4 Wheelers*, 287 Or at 604—was confined by its prior resolution to apply "preexisting criteria" to that determination, rather than making a discretionary decision on whether to retain the road.

Further, that determination was "directed at a closely circumscribed factual situation or a relatively small number of persons." *Strawberry Hill 4 Wheelers*, 287 Or at 603. Plaintiff attempts to focus on the April 2000 resolution and notes that it applies broadly to all potential RS 2477 roads in the county. However, again, the operative action is the board's 2002 determination that, as a matter of historical fact, Connor Creek Road satisfied the criteria for an RS 2477 road. That is a quintessential "closely circumscribed factual situation." Moreover, the decision directly involved relatively few property owners (plaintiff and the Bureau of Land Management) who attended and expressed views on the matter at the hearing.

We thus conclude that the county's decision in 2002 to declare Connor Creek Road an RS 2477 road was a "quasi-judicial decision," reviewable pursuant to ORS 34.010 to 34.102.

We turn to the related question of whether plaintiff is jurisdictionally precluded from seeking some or all the relief that he seeks in this case, because of his failure to timely pursue a remedy via the writ of review statutes. Our decision in *Pangle v. Bend-LaPine School District*, 169 Or App 376, 10 P3d 275 (2000), *rev den*, 332 Or 558 (2001), is instructive. In *Pangle*, the plaintiffs, who sought to challenge a school district's disciplinary decision, brought two actions, one seeking a writ of review, and the other seeking, *inter alia*, a declaratory judgment and related injunctive relief under ORS chapter 28, alleging that the school's disciplinary decision violated various provisions of the state and federal constitutions. *Id.* at 379. The trial court dismissed the plaintiffs' petition for writ of review as untimely, and we affirmed that dismissal. *Id.* at 383.[7] The trial court also dismissed the

---

[7] The plaintiffs had 60 days from the date of the county's decision to seek a writ of review, ORS 34.030, but failed to do so.

plaintiffs' state law claims for declaratory and injunctive relief on the merits, rejecting the defendants' argument that those claims were jurisdictionally barred by the exclusivity provisions of ORS 34.020. *Id.* at 383.

On appeal, we addressed the defendants' cross-assignment of error that the trial court lacked jurisdiction to adjudicate the merits of the state law claims for declaratory and related injunctive relief. We began by determining that the predicate disciplinary decision was quasi-judicial. *Id.* at 384. We then stated:

> "[T]his case is not one in which review under ORS 34.010 to ORS 34.102 was unavailable had it been timely filed, or a case in which another specific statutory or a common-law remedy exists for which there is jurisdiction over the cause. *See Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992), *cert den* 507 US 1017 (1993) (holding that the trial court had subject matter jurisdiction over a common-law wrongful discharge claim); *see also Ettner v. City of Medford*, 155 Or App 435, 963 P2d 149, *rev den* 328 Or 40 (1998) (holding that, regarding claims for employment discrimination under ORS chapter 659, the exclusivity provision of ORS 34.102(2) was inapplicable). Here, plaintiffs seek substantially the same relief under both their writ of review and declaratory judgment actions. To permit plaintiffs to obtain relief on their state law claims in their declaratory judgment action in this case would result in a *de novo* review of the hearings officer's decision in contravention of the exclusivity provision of ORS 34.020 and the time requirement in ORS 34.030."

*Pangle,* 169 Or App at 384-85. Consequently, the plaintiffs' state law claims were barred.

We went on, however, to hold that, although the writ of review was the plaintiffs' exclusive remedy for the state law claims, they could pursue a remedy under 42 USC section 1983 for alleged violation of First Amendment rights. *Id.* at 385-86 (citing *Barcik v. Kubiaczyk*, 321 Or 174, 185, 895 P2d 765 (1995) (court may not apply state standards of justiciability if doing so would "limit the rights that a plaintiff has in a federal claim, simply because that claim is brought in state court")).

Here, plaintiff contends that his claims for declaratory and related injunctive relief and his inverse condemnation claim are all more closely analogous to the section 1983 claim at issue in *Pangle* than to the jurisdictionally precluded claims for declaratory and injunctive relief in *Pangle*. That is so, plaintiff posits, because his claims rest on plaintiff's "Federal rights under his United States patent and in accordance with a Federal statute, and a Federal court applying Federal law would sustain those rights." Plaintiff, however, cites no federal statute, or any other authority, for his sweeping proposition that a landowner's ability to trace a property's ownership back to the original grantee of a federal mining patent has a cause of action in federal court whenever a property dispute arises concerning the property. We reject that unsubstantiated assertion without further discussion.

The ultimately persuasive position is that plaintiff's inverse condemnation claim, insofar as it is based on the Takings Clause of the Fifth Amendment to the United States Constitution, is similar to the First Amendment claim in *Pangle*.[8] However, before addressing that matter, we conclude our discussion, and disposition, of plaintiff's claims for declaratory and related injunctive relief.

In seeking declaratory and injunctive relief, plaintiff alleged that (1) he owns the property crossed by Connor Creek Road; (2) the road was built by his predecessors in interest well after the issuance of the mining patent in 1883; (3) defendant had erroneously declared the road to be an RS 2477 road; and (4) defendant's action in doing so had prevented plaintiff from making use of his property. Based on those allegations, plaintiff sought a declaration that the road is not an RS 2477 road and that defendant's action in declaring it to be so was invalid.

Those allegations dovetail with the prerequisites for writ of review. Under ORS 34.040(1), a writ of review "shall be allowed in all cases in which a substantial interest of a plaintiff has been injured," and the defendant

---

[8] Plaintiff does not assert that argument. However, we have raised the entire jurisdiction issue *sua sponte* and are required to resolve that question correctly, regardless of the parties' submissions.

"in the exercise of judicial or quasi-judicial functions appears to have:

"(a)   Exceeded its jurisdiction;

"(b)   Failed to follow the procedure applicable to the matter before it;

"(c)   Made a finding or order not supported by substantial evidence in the whole record;

"(d)   Improperly construed the applicable law; or

"(e)   Rendered a decision that is unconstitutional."

Here, plaintiff's claims for declaratory and related injunctive relief challenge the county's factual determination that Connor Creek Road existed as a right-of-way over public lands before the issuance of the mining patent in 1883. That challenge falls squarely within what may be reviewed pursuant to a writ of review under ORS 34.040(1)(c). As in *Pangle*, the declaratory and injunctive relief claims here are jurisdictionally precluded, because plaintiff's exclusive remedy was within the writ of review statutes, *see* ORS 34.102(2), and he failed to raise a timely challenge to the county's decision pursuant to those statutes.

At least initially, one might assume that plaintiff's inverse condemnation claim is similarly precluded because (1) the gravamen of that claim is that defendant's declaration of the road as a county road was unconstitutional under the state and federal constitutions as a taking of his property without compensation; and (2) ORS 34.040(1)(e) allows a court to issue a writ of review when it appears that a county has rendered a quasi-judicial "decision that is unconstitutional." Further, ORS 34.100 permits a court, upon allowance of a writ of review, to grant "restitution" to a plaintiff— which, at least arguably, includes monetary damages for an unconstitutional taking. Finally, we have assumed, on numerous occasions, that the writ of review process can be used to review an alleged unconstitutional taking. *See, e.g.*, *Homebuilders Assn. v. Tualatin Hills Park & Rec.*, 185 Or App 729, 62 P3d 404 (2003) (addressing merits of dismissal of writ of review/takings claims); *Rogers Machinery, Inc. v. Washington County*, 181 Or App 369, 45 P3d 966, *rev den*, 334 Or 492 (2002), *cert den*, 538 US 906 (2003) (deciding

merits of federal takings claim in writ of review context); *Schultz v. City of Grants Pass*, 131 Or App 220, 884 P2d 569 (1994); *Benson v. City of Portland*, 119 Or App 406, 850 P2d 416, *rev den*, 318 Or 24 (1993). However, it is not clear that all of those cases actually involve inverse condemnation or regulatory takings claims seeking damages, rather than some form of equitable relief.[9]

In all events, we have found no reported Oregon decision holding that the writ of review process is the exclusive remedy for plaintiffs seeking damages for inverse condemnation based on a county's quasi-judicial actions. Indeed, we have recently suggested that it is not. *See Spivak v. Marriott*, 213 Or App 1, 159 P3d 1192 (2007).

In *Spivak*, the plaintiff sought a writ of review concerning a city's decision and also raised additional claims, including a federal constitutional taking claim via 42 USC section 1983. After explaining why the trial court had improperly dismissed the plaintiff's petition for writ of review, *id.* at 10-11, we further concluded that the trial court had erred in dismissing the plaintiff's remaining claims on the ground that the writ of review provided the exclusive remedy.[10] Although in *Spivak*, we did not explain our conclusion concerning the takings claims at any length, that conclusion is consistent with the reasoning that follows.

■     In *Vokoun v. City of Lake Oswego*, 189 Or App 499, 510, 76 P3d 677 (2003), *rev den*, 336 Or 406 (2004), we

---

[9] For example, *Homebuilders Assn.* appears to have involved not only takings allegations within the writ of review claim, but also separately stated claims for damages, including a claim "under 42 USC section 1983, for violation of the federal Takings Clause." 185 Or App at 732. Conversely, *Rogers Machinery, Inc.*, appears to have involved an attempt to recover the payment of an assessment on the theory that it violated the Takings Clause of the Fifth Amendment, and the challenge was asserted solely in the context of a writ of review.

[10] In connection with the plaintiff's takings claim, we concluded that the plaintiff sought

"to enforce rights that will not necessarily be adjudicated on review of the city's 2003 decision pursuant to ORS 34.040. The rights that plaintiff sought to enforce could be grounded in different applicable law from a statute, administrative regulation, or other rule that governs and was construed by the city in its 2003 decision."

*Id.* at 16.

described the essential character of an inverse condemnation claim:

> "An action for inverse condemnation is one for damages asserted against a governmental entity with the power of eminent domain that has taken private property for public use without initiating condemnation proceedings, that is, without paying just compensation. *See generally City of Keizer v. Lake Labish Water Control Dist.*, 185 Or App 425, 429-31, 60 P3d 557 (2002) (describing the nature and theory of inverse condemnation claims). It is a direct action to enforce the self-executing provisions of Article I, section 18, of the Oregon Constitution or the Fifth Amendment to the United States Constitution, both of which prohibit takings of private property for public use without the payment of just compensation. *Id*. at 430."

Thus, an inverse condemnation claim is a claim for damages. Such claims are actions at law that fall within the general jurisdiction of the circuit court and, under Article I, section 17, and Article VII (Amended), section 3, of the Oregon Constitution, potentially carry with them a right of trial by jury.[11] *Cf. Monterey v. Del Monte Dunes*, 526 US 687, 119 S Ct 1624, 143 L Ed 2d 882 (1999) (plaintiff in section 1983 inverse condemnation action had right to a jury trial in federal court, based on conclusion that such action was historically an action at law).

■ Although plaintiff did not seek a jury trial on his inverse condemnation claim in this case—and, in fact, did not even couch the federal constitutional aspects of that claim in terms of 42 USC section 1983—our determination as to whether ORS 34.102(2) precludes the prosecution of inverse condemnation claims is not dependent on the facts of this particular case. Rather, we need to determine the scope of the

---

[11] Although eminent domain proceedings have been held not to entail a constitutional jury trial right under the Oregon Constitution, *see Moore Mill & Lbr. Co. v. Foster*, 216 Or 204, 225, 336 P2d 39 (1959); *Kendall v. Post*, 8 Or 141, 146 (1879), inverse condemnation proceedings apparently do. *See, e.g.*, *Vokoun v. City of Lake Oswego*, 169 Or App 31, 36, 7 P3d 608 (2000), *rev'd on other grounds*, 335 Or 19, 56 P3d 396 (2002); *Hawkins v. City of La Grande*, 315 Or 57, 72, 843 P2d 400 (1992); *Thornburg v. Port of Portland*, 233 Or 178, 199-200, 376 P2d 100 (1962). *Cf. Monterey v. Del Monte Dunes*, 526 US 687, 710-11, 119 S Ct 1624, 143 L Ed 2d 882 (1999) (although there is no Seventh Amendment right to a jury trial in eminent domain proceedings, the rationale for that conclusion does not carry over into inverse condemnation cases).

exclusivity provision of ORS 34.102 in light of the general rule of statutory construction that, when a statute is susceptible to both a constitutional and an unconstitutional interpretation, we will assume that the legislature intended the constitutional one. *See generally State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996).

ORS 34.010 to 34.102 do not contain provisions for a writ of review proceeding to be conducted before a jury. Rather, those statutes contemplate that the court will undertake the review. *See generally* ORS 34.100. Thus, to construe the exclusivity provision of ORS 34.102(2) as encompassing state and federal claims for inverse condemnation would mean that the substance of such claims must be submitted to, and determined by, a court, and not a jury. That, in turn, would create a conflict with jury trial rights under both 42 USC section 1983 and Article VII (Amended), section 3, of the Oregon Constitution.

■     Here, ORS 34.102 is susceptible to an interpretation that would avoid that conflict. When interpreting a statute, we view, as part of the statutory context, prior judicial interpretations of the statute. *Bergerson v. Salem-Keizer School District*, 341 Or 401, 413, 144 P3d 918 (2006). Prior judicial interpretations of the exclusivity provisions of ORS 34.010 to 34.102 indicate that those statutes do not "serve to abolish established common-law remedies." *Cloyd v. Lebanon School District 16C*, 161 Or App 572, 578, 985 P2d 232 (1999) (writ of review was not exclusive remedy for alleged contract violation) (citing *Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992), *cert den*, 507 US 1017 (1993) (writ of review was not exclusive remedy for employee bringing tort claim for wrongful discharge)); *see also Spivak*, 213 Or App at 15-16 (writ of review exclusivity did not preclude claims for inverse condemnation, conversion, and fraud); *Pangle*, 169 Or App at 385-86 (writ of review exclusivity did not preclude section 1983 action for alleged violation of First Amendment); *Ettner v. City of Medford*, 155 Or App 435, 963 P2d 149, *rev den*, 328 Or 40 (1998) (writ of exclusivity did not bar statutory employment discrimination claim). Thus, the exclusivity provisions contained in the writ of review statutes, although facially not suggesting any exceptions to the exclusivity principle, have been interpreted on numerous occasions not to bar a variety

of claims, including constitutional claims similar to the one at issue here.[12]

■■    Given that case law, we conclude that the exclusivity principle set forth in ORS 34.102 is susceptible to plausible interpretation that it bars inverse condemnation actions, and to plausible interpretation that it does not. Consistently with the principle of construction that statutes are, if possible, to be construed to avoid unconstitutional results, we conclude that the writ of review is not the exclusive remedy for a plaintiff seeking to bring an inverse condemnation claim against a county based on a quasi-judicial decision.[13] Accordingly, the trial court had subject matter jurisdiction to adjudicate the merits of plaintiff's inverse condemnation claim.

We turn, then, to plaintiff's substantive arguments that the trial court, after a trial to the court, erred in rejecting the inverse condemnation claim. Plaintiff's arguments on appeal are very substantially predicated on an erroneous assumption as to our standard of review. Specifically, plaintiff contends that this appeal is "from a judgment in a case that constitutes a suit in equity at common law," and, thus, we must engage in *de novo* review. ORS 19.415(3).

■■    Plaintiff is mistaken. As we have explained above, plaintiff's claim for inverse condemnation is, in essence, an action at law for damages. Consequently, our review is governed by ORS 19.415(1), which provides that in an appeal from a judgment "in an action at law, the scope of review shall be as provided in section 3, Article VII (Amended) of the Oregon Constitution." Article VII (Amended), section 3, in turn, provides, in pertinent part that, in an action at law, "no

---

[12] As we noted in *Cloyd*, "[t]he basis for this rule is less clear than the rule itself." 161 Or App at 579 n 5 (citing *Ettner* and *Shockey*).

[13] That conclusion, or course, could give rise to numerous potential questions: If different factfinders hear writ of review and inverse condemnation claims concerning the same facts and reach different results, how is a court to resolve those differences? Could the finding of one factfinder have a preclusive effect in regard to the other claim? Should the failure to pursue a writ of review remedy to challenge a county's quasi-judicial factfinding preclude challenges to those findings in other actions? Those are questions that we do not resolve here, because they have not been briefed and argued by the parties, and do not involve jurisdictional matters that we are obliged to grapple with *sua sponte. Accord Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 713 n 3, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003) (declining to reach similar issues due to lack of ripeness).

fact tried by jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Here, that standard of review compels affirmance of the trial court's judgment on the inverse condemnation claim.[14]

Ultimately, plaintiff's position is that the historical evidence that he adduced pertaining to when the Connor Creek Road was created and where it was located was far more compelling than defendant's evidence. We fully appreciate that argument. Nevertheless, we cannot say that there is "no evidence" to support the trial court's judgment.

Judgment dismissing first and second claims vacated for lack of jurisdiction and remanded for entry of judgment dismissing those claims for lack of jurisdiction; otherwise affirmed.

---

[14] Plaintiff also posits that "the law places the burden upon the County to prove the existence of an RS 2477 road across plaintiff's property"—a proposition that, if true, would effectively shift the burden of proof, at least with respect to the lawfulness of the county's action, on the inverse condemnation claim. *But see Thornburg*, 233 Or at 184-85 (the plaintiff must show that there has been a taking). The cases that plaintiff invokes for that proposition, *see, e.g., Southern Utah Wilderness Alliance v. Bureau of Land Management*, 147 F Supp 2d 1130 (D Utah 2001) (county seeking to enforce RS 2477 right-of-way against federal government bears burden of proving validity of right-of-way, based on principle that "land grants are construed favorably to the [federal] Government" and doubts "are resolved for the Government, not against it"), do not so state, and we are unaware of any authority to that effect.