Argued and submitted April 27, affirmed September 27, petition for review denied December 12, 1995 (322 Or 362)

# STATE OF OREGON,
*Respondent,*

*v.*

# KEVIN W. ANDERSON,
*Appellant.*

## (CM93-0524; CA A81744)

902 P2d 1206

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Rives Kistler, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Caroline M. Carey, Assistant Attorney General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Defendant appeals his convictions for rape in the first degree, ORS 163.375, and sodomy in the first degree, ORS 163.405. The basis of the conviction was the victim's incapacity to consent because of mental defect.[1] We affirm.

On July 22, 1992, the victim, a mentally retarded and hearing-impaired 25 year old, went to a tavern in Corvallis. As she walked from the tavern early in the morning of July 23, defendant drove up and stopped his car. He told the victim to get into the car, saying that he would take her home. Defendant, who was drunk, drove to a nearby school and parked the car. According to the victim, he pushed the seat back, took off her pants, had sexual relations with her and made her perform oral sex on him.

The victim walked to her sister's home where she arrived at about 1:30 a.m. She was crying and appeared sick. She told her sister that a "big man fucked me" and had hurt her. She vomited in the sink. The victim's sister called her mother. The residences of the mother and sister were in view

---

[1] ORS 163.375 provides, in part:

"(1) A person who has sexual intercourse with another person commits the crime of rape in the first degree if:

"* * * * *

"(d) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

ORS 163.405 provides, in part:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"* * * * *

"(d) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

ORS 163.315 provides:

"A person is considered incapable of consenting to a sexual act if the person is:

"(1) Under 18 years or age; or

"(2) Mentally defective; or

"(3) Mentally incapacitated; or

"(4) Physically helpless."

According to ORS 163.305(3), " '[m]entally defective' means that person suffers from a mental disease or defect that renders that person incapable of appraising the nature of the conduct of the person."

of each other, and the mother and sister decided that the victim should walk to her mother's house, where her mother helped her. About one week later, when the victim was with her mother, she saw defendant, and the mother obtained the license number of defendant's car. Her mother then took the victim to the hospital, were she was examined, and the police were given the unwashed clothing that the victim had been wearing the night of the incident. The underpants contained semen, and DNA testing showed that the semen was defendant's.

The victim is virtually blind in one eye and has hearing impairment, but dislikes and refuses to wear her hearing aids. She works 1/2 hour a week, loves sports, takes part in Special Olympics, loves to dance and does so at local taverns, attends a center for learning skills, has a core group of friends, and has had sexual relationships with at least two boyfriends. She has difficulty with verbal communication and communicates with body language. At trial, the expert testimony showed that, overall, the victim functions at a level of moderate mental retardation. Her mental functioning is equivalent to that of a 7- to 10-year old. The victim understands sex as intercourse, with the man on top and the woman on the bottom. She also understands that condoms can prevent pregnancy and venereal disease, but she does not understand other forms of birth control. The jury acquitted defendant of charges of kidnapping, forcible rape, and forcible sodomy.

Defendant first assigns error to the trial court's ruling excluding evidence of statements that defendant had heard regarding the victim's sexual reputation. The excluded evidence was that: (1) in early 1989, two friends told defendant to "go get some" from the victim as she was a "free whore;" (2) in early 1989, defendant's former girlfriend said that the victim would "screw anybody;" (3) in mid-1989, another former girlfriend said that the victim was "the easiest lay in town;" (4) in 1990, defendant's former roommate told him that the victim was a "tramp" and a "whore." The court did allow evidence of specific instances of the victim's past sexual relationships with two other men and that she frequented the tavern and acted suggestively towards men there. The court permitted defendant to testify

that he had noticed the victim dancing with five or six different men at a tavern, that he had often seen her dancing suggestively on a street corner, that he repeatedly saw her dance close to different men and be suggestive with them and that, on a previous occasion, he had left a bar with her and had had a sexual encounter with her in which she was the initiator.

■ We review the court's refusal to allow the evidence for abuse of discretion. *State v. Presley*, 108 Or App 149, 151, 814 P2d 550 (1991). Defendant argues that, although OEC 412, the "rape shield law," precludes reputation or opinion evidence of the past sexual behavior of an alleged victim, he has a constitutional right to present a defense. Defendant argues that the excluded evidence was relevant to his state of mind. He argues that it was relevant in proof of his affirmative defense under ORS 163.325(3) that he "did not know of the facts or conditions responsible for the victim's incapacity to consent."[2]

Defendant's position is that, because he had been told that the victim engages in sexual conduct with others, he believed that she had the capacity to consent. He argues that, although others might not share the logic of his view, nonetheless it is *his* state of mind that the affirmative defense puts at issue. Therefore, he contends, the jury should have been presented with the evidence because it shows the basis for his belief that the victim's sexual relations with other men showed that she had the capacity to consent.

Defendant's argument misses the mark. Under ORS 163.325(3), defendant's generalized belief that the victim could consent to sexual relations is immaterial; rather, to avoid culpability, defendant had to show that he "did not know of the facts or conditions responsible for the victim's incapacity to consent." Here, those "facts or conditions" that are responsible for the victim's incapacity to consent are her

---

[2] ORS 163.325(3) provides:

"In any prosecution under ORS 163.355 to 163.445, in which the victim's lack of consent is based solely upon the incapacity of the victim to consent because the victim is mentally defective, mentally incapacitated or physically helpless, it is an affirmative defense for the defendant to prove that at the time of the alleged offense the defendant did not know of the facts or conditions responsible for the victim's incapacity to consent."

mental retardation. ORS 163.315. Thus, the critical inquiry was whether defendant was aware of the victim's mental retardation. We agree with the state that the victim's alleged reputation for promiscuous sexual activity is immaterial to that inquiry.

■    Defendant's right to present a defense does not include a constitutional right to present irrelevant, prejudicial evidence. *See State v. Wright*, 97 Or App 401, 407, 776 P2d 1294, *rev den* 308 Or 593 (1989) (confrontation clauses require only that court admit evidence that is relevant after the court has balanced probative value against prejudicial effect). The court did not err in excluding the evidence of the victim's alleged propensities and prior conduct.

Defendant next assigns error to the court's denial of his motion to dismiss the charges for which he was convicted. Defendant's motion was based on statements made by the prosecutor during an omnibus hearing. At several points during the proceeding, the prosecutor conceded and offered to stipulate that the victim had the capacity to consent to sexual relations. However, the prosecutor later retreated from those statements. At the end of the hearing the prosecutor stated that the state's position would be that the victim was incapable of consenting under all circumstances, but that, in some circumstances, such as relationships condoned by the victim's mother, the state would not charge a crime.

Defendant's motion to dismiss was made on the ground that the state had made judicial admissions in open court that negated a required element of the charged offenses. In denying defendant's motion, the trial court held that the prosecutor had not made a binding judicial admission, that a prosecutor has broad discretion in deciding which offenses to charge, and that the victim might be capable of consenting in some situations, but not in the factual situation at issue.

■    Defendant argues that all three grounds given by the trial court were in error. Regarding prosecutorial discretion, defendant argues that "mental defect" in ORS 163.375(1)(d) and ORS 163.405(1)(d) is unconstitutionally vague and does not give adequate guidance to prosecutors. However, the

defendant did not challenge the constitutionality of the statute in the trial court, and we decline to address the constitutional arguments for the first time on appeal.

■■ Defendant argues that the court erred in holding that the statements were not a judicial admission. We agree with the trial court that the prosecutor's statements did not constitute a judicial admission. A judicial admission is a formal concession in pleadings or stipulations that withdraws a fact from issue. John W. Strong, ed., II *McCormick on Evidence* § 254, 142 (4th ed 1992). The statements by the prosecutor in the colloquy with the court did not reach that level.

Defendant finally contends that the trial court erred in holding that whether a person has the mental capacity to consent can depend on the situation. He argues that, if a "mental defect" renders the victim incapable of consent, then the victim cannot consent irrespective of the circumstances. However, we need not address defendant's argument. Whether the court was correct in concluding that the victim might be capable of capacity in some situations, its ruling that the state had not made a judicial admission regarding the victim's capacity to consent renders the issue theoretical.

■ Defendant's final assignment of error is that the court erred in denying his motion for a judgment of acquittal because the state failed to carry its burden of proof to show that the victim was legally incapable of consenting to sexual relations. Viewing the evidence in the light most favorable to the state, *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989), we conclude that there was sufficient evidence for the jury to determine that the victim suffered from a mental defect that rendered her incapable of consenting to sexual relations with defendant.

Affirmed.