Argued and submitted July 13, 2018, affirmed on appeal and cross-appeal
December 11, 2019

T. J. KLEIKAMP,
individually and
Friends of Yamhill County,
an Oregon nonprofit corporation,
*Plaintiffs-Respondents*
*Cross-Respondents,*
*and*
STATE OF OREGON,
by and through the
Department of Land Conservation
and Development,
*Intervenor-Respondent*
*Cross-Respondent,*
*v.*
BOARD OF COMMISSIONERS
OF YAMHILL COUNTY,
an Oregon municipal corporation,
*Defendant-Appellant*
*Cross-Respondent,*
*and*
Steven GREGG
and Thomas Gregg,
*Defendants*
*Cross-Appellants,*
*and*
Donald GREGG,
an individual,
*Intervenor-Appellant*
*Cross-Respondent.*

Yamhill County Circuit Court
14CV14861; A164255

455 P3d 546

Steven, Thomas, and Donald Gregg and the Board of Commissioners of
Yamhill County appeal from a judgment entered in a writ of review proceed-
ing that reversed Yamhill County's determination that, under Yamhill County
Ordinance 823 and section 5(3) of Ballot Measure 49 (2007), Steven, Thomas,

and Donald Gregg have a right to complete a subdivision on property that they own in Yamhill County. *Held*: The circuit court had subject matter jurisdiction. The circuit court erred in determining that ORS 215.130 and a county ordinance implementing that statute applied to, and extinguished, the claims under section 5(3) of Measure 49. However, appellants have not demonstrated any error in the circuit court's rulings that neither Steven nor Thomas is a "claimant that filed a claim under [Measure 37]" within the meaning of section 5(3) of Measure 49 and that Donald is not an "applicant," as required by Ordinance 823, because he never "obtained Measure 37 relief from the Board [of Commissioners of Yamhill County]."

Affirmed on appeal and cross-appeal.

Ronald W. Stone, Judge.

Timothy S. Sadlo and T. Beau Ellis argued the cause for appellants-cross-respondents Donald Gregg and Board of Commissioners of Yamhill County. Also on the joint briefs was Vial Fotheringham LLP.

Edward H. Trompke argued the cause for cross-appellants Steven Gregg and Thomas Gregg. Also on the briefs was Jordan Ramis PC.

Ralph O. Bloemers argued the cause and filed the brief for respondents-cross-respondents T. J. Kleikamp and Friends of Yamhill County.

Frederick M. Boss, Deputy Attorney General, Benjamin Gutman, Solicitor General, and Judy C. Lucas, Assistant Attorney General, filed the brief for respondent-cross-respondent State of Oregon.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Affirmed on appeal and cross-appeal.

_____
   * Egan, C. J., *vice* Garrett, J. pro tempore.

**POWERS, J.**

Steven, Thomas, and Donald Gregg and the Board of Commissioners of Yamhill County appeal from a judgment entered in a writ of review proceeding that reversed Yamhill County's determination that, under Yamhill County Ordinance 823 and section 5(3) of Ballot Measure 49 (2007), Steven, Thomas, and Donald Gregg have a right to complete a subdivision on property that they own in Yamhill County.[1] The circuit court reversed the county's determination for two independent reasons: First, the court held that none of the relevant parties was an "applicant" for purposes of a vesting decision under Ordinance 823 and, relatedly, that Steven and Thomas are not "claimant[s] that filed a claim under [Ballot Measure 37 (2004)]," as required by section 5(3) of Measure 49. Second, the court held that ORS 215.130, which requires nonconforming uses to be continuous, and a county ordinance implementing that statute apply to, and extinguish, the claims under section 5(3) of Measure 49. In the judgment, the court also dismissed a complaint for declaratory judgment filed by Friends of Yamhill County (FOYC) and T. J. Kleikamp. That dismissal is not at issue on appeal.

On appeal, Steven, Thomas, and Donald Gregg and the county (jointly, appellants)[2] first contend that the court should have dismissed the writ of review proceeding for lack of subject matter jurisdiction because Donald Gregg was not timely served. Second, they assert that the

---

[1] As explained below, 301 Or App at 289-90 it is not clear who was required to apply for the vesting determination at issue in this case, who did apply for it, and which members of the Gregg family it applies to. We need not, and do not, resolve those questions in this opinion. Throughout the opinion, we assume, without deciding, that the county's decision applies to Steven, Thomas, and Donald Gregg.

[2] Donald Gregg and the county filed a single notice of appeal and have filed joint briefing, and Steven and Thomas Gregg filed a single notice of appeal and have filed joint briefing. To avoid confusion, throughout this opinion we refer to Steven, Thomas, and Donald Gregg by their first names.

Although Steven and Thomas's appeal is denominated a cross-appeal, all of Steven and Thomas's arguments are aligned with the arguments of Donald and the county; all of those arguments present various reasons that, in those parties' view, we should vacate or reverse the circuit court's judgment. Consequently, we consider their arguments together, and we refer to those four parties jointly as appellants. We distinguish between the arguments of Steven and Thomas, on one hand, and Donald and the county, on the other hand, only when their arguments do not overlap completely.

court erred in reversing the county's determination because (1) ORS 215.130 and the county ordinance do not apply to their claims and, (2) contrary to the court's reasoning, they are "applicants" under the ordinance and "claimant[s] that filed a claim under [Measure 37]," as required by section 5(3) of Measure 49. To obtain reversal based on their second assertion, appellants must demonstrate on appeal that the court erred in both ways they assert because the court based its decision on two independent grounds. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 236, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) (explaining that, when a trial court bases a decision on multiple grounds, an appellant must demonstrate error on all of the independent bases supporting the court's ruling).

First, as explained below, we reject appellants' jurisdictional challenge. As to their second assertion, we agree with appellants' argument, in their third assignments of error, that the circuit court erred in determining that ORS 215.130 and the county ordinance applied to, and extinguished, the claims under section 5(3) of Measure 49. *See Oregon Shores v. Board of County Commissioners*, 297 Or App 269, 279-80, 441 P3d 647 (2019) (explaining that ORS 215.130 and implementing ordinances are immaterial to claims under section 5(3) of Measure 49 if any discontinuance that occurred took place after December 6, 2007, the only date on which section 5(3) required a vested right to exist); *Friends of Yamhill County v. Board of Commissioners*, 298 Or App 241, 247, 446 P3d 548, *rev den*, 365 Or 769 (2019) (same); *DLCD v. Yamhill County*, 298 Or App 260, 262, 445 P3d 893, *rev den*, 365 Or 769 (2019) (same).

However, as explained below, appellants have not demonstrated any error in the circuit court's rulings that neither Steven nor Thomas is a "claimant that filed a claim under [Measure 37]" within the meaning of section 5(3) of Measure 49 and that Donald is not an "applicant," as required by Ordinance 823, because he never "obtained Measure 37 relief from the Board [of Commissioners of Yamhill County]." Consequently, we affirm the circuit court's judgment.[3]

---

[3] In a memorandum of additional authorities, respondents point out that, in two recent cases, we held that Measure 37 claimants who intended, on December 6,

## I.  SUBJECT MATTER JURISDICTION

We begin with appellants' first assignments of error, in which they assert that the circuit court lacked subject matter jurisdiction over the writ of review proceeding.

### A.  *History and Parties' Arguments*

The facts relevant to our discussion of subject matter jurisdiction are procedural, and we provide them here. We set out the facts relevant to our discussion of the merits of the dispute below, 301 Or App at 287-89.

Yamhill County issued the vesting decision at issue in this appeal on August 11, 2014.[4] Within 60 days of the county's decision, on October 9, 2014, Kleikamp and FOYC petitioned for a writ of review in Yamhill County Circuit Court.[5] *See* ORS 34.010 - 34.100 (establishing writ of review proceedings); ORS 195.318 (providing for judicial review of county decisions under section 5 of Measure 49 by writ of review). Later in October, the circuit court issued the writ and ordered the Board of Commissioners of Yamhill County to return the writ, together with a certified copy of the record and proceedings before the county, by December 15, 2014. *See* ORS 34.060 (providing for substance and return of the writ); ORS 34.080 (providing for issuance and service of the

---

2007, only to sell lots—rather than building and selling dwellings—could not obtain relief under section 5(3) of Measure 49. *Friends of Yamhill County*, 298 Or App at 258-59; *DLCD*, 298 Or App at 262-63. They assert, as they did before the circuit court, that the record in this case demonstrates that, at the relevant time, the intended project was to sell lots and, accordingly, that we should affirm in this case on that alternative ground. Because we conclude that the circuit court correctly determined that Steven, Thomas, and Donald cannot obtain relief for other reasons, we do not address that question.

[4] Under Ordinance 823, claimants "apply for a 'final county vesting decision' by an 'independent vesting officer.' (Capitalization omitted.) The independent vesting officer is a private attorney employed by the county to adjudicate applications for vested rights determinations." *Friends of Yamhill County, Inc. v. Board of Commissioners*, 351 Or 219, 229 n 7, 264 P3d 1265 (2011). Throughout this opinion, we refer to both the county and the vesting officer as "the county" or "Yamhill County."

[5] At the same time, the same parties filed a declaratory judgment complaint seeking similar relief and naming Steven and Thomas as defendants. The propriety of that complaint dominated the litigation of the motions to dismiss that we summarize below. Because that complaint is immaterial to this appeal, however, we do not recount the parties' arguments on that subject.

writ). A copy of the writ was served on Steven and Thomas at that time, but not on Donald. The Board of Commissioners returned the writ on December 11, 2014, along with a certified copy of the record.

In January 2015, Steven and Thomas moved to dismiss the writ of review proceeding for lack of subject matter jurisdiction. They relied on ORS 34.080, which provides, in part, "A certified copy of the writ shall be served by delivery to the opposite party in the suit or proceeding sought to be reviewed, at least 10 days before the return of the original writ." Steven and Thomas argued that Donald had not been served with the writ and that he was an "opposite party in the suit or proceeding sought to be reviewed" who had to be served as required by ORS 34.080.

In response, Kleikamp and FOYC contended that Donald was not an "applicant" for the challenged county decision, and, thus, that he was not an "opposite party" who had to be served with the writ. Alternatively, they moved the court to extend the time for serving the writ on opposite parties, contending that such an extension is within the court's discretion and that the court does not lack subject matter jurisdiction under such circumstances. *See Holland-Washington Co. v. County Court*, 95 Or 668, 674, 188 P 199 (1920) ("[W]e are of the opinion that the order enlarging the time within which to make service of a copy of the writ upon [the opposite party] was a legitimate exercise of judicial authority."); *Meury v. Jarrell*, 16 Or App 239, 244, 517 P2d 1221, *aff'd*, 269 Or 606, 525 P2d 1286 (1974) ("The court for good reason by its action can extend the 10-day period for serving of the writ.").

The court denied Steven and Thomas's motion to dismiss, concluding that "[t]he Court has jurisdiction over the action because the Petition for Writ of Review was filed within 60 days of Yamhill County's decision." It granted Kleikamp and FOYC's motion for leave for additional time to serve opposite parties, extending the time for service to April 30, 2015. Donald was served with a copy of the writ before that date. The court never reissued the writ or amended the date by which the county had to return the writ.

In April 2015, the state intervened. In May 2015, Donald moved to intervene and, at the same time, moved to dismiss, arguing that his participation in the case rendered moot the issues raised in the petition for the writ of review. Shortly thereafter, appellants moved to amend the petition for writ of review to reflect Donald's participation in the case. The court allowed Donald to intervene, denied his motion to dismiss, and granted the motion to amend. As explained below, after considering the merits, the circuit court entered a general judgment reversing the county's decision.

In their first assignments of error, appellants argue that the circuit court lacked subject matter jurisdiction over the writ of review proceeding because Donald was not served with a copy of the writ "at least 10 days before the return of the original writ."[6] ORS 34.080. Steven and Thomas's argument is predicated exclusively on a lack of subject matter jurisdiction; that is, Steven and Thomas do not contend that, even if the court had subject matter jurisdiction, it nevertheless erred in denying their motion to dismiss. However, Donald and the county do, very briefly, make an alternative argument; they argue that, "even if the petition for writ of review conferred upon the circuit court jurisdiction, the circuit court erred by proceeding forward without each of the 'opposite parties' having been properly served."

B.   *Analysis*

Subject matter jurisdiction is "the authority to deal with the general subject involved." *State v. Murga*, 291 Or App 462, 466, 422 P3d 417 (2018) (citing *Garner v. Alexander*, 167 Or 670, 675, 120 P2d 238 (1941), *cert den*, 316 US 690 (1942)). It exists "when the constitution, the legislature, or the common law has directed a specific court to do something about a specific kind of dispute." *Id.* (citing *School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972)). A lack of subject matter jurisdiction can be raised at any time.

---

[6] Appellants also contend that Sharlene Gregg had to be served and that she never was served with a copy of the writ. In light of our disagreement with their proposition that lack of service on all opposite parties deprives the court of subject matter jurisdiction, any lack of service on Sharlene Gregg, even if she is an opposite party, is immaterial to the narrow question before us on appeal.

*Id.* at 465; *see also Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 384, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 395, 8 P3d 200 (2001). If a court lacks subject matter jurisdiction over a claim brought before it, it must dismiss the proceeding. *See, e.g.*, *Alto v. State Fire Marshal*, 319 Or 382, 396, 876 P2d 774 (1994) (remanding to the circuit court "with instructions to dismiss plaintiffs' complaint" after concluding that the circuit court lacked subject matter jurisdiction); *Butchart v. Baker County*, 214 Or App 61, 79, 166 P3d 537 (2007) (vacating circuit court judgment and remanding for entry of a judgment dismissing the claims over which the circuit court lacked subject matter jurisdiction).

Appellants acknowledge that the petition for writ of review at issue here was filed within 60 days of the county's decision, and Donald and the county acknowledge that we have held in numerous cases regarding writ of review proceedings that "[t]he circuit court acquires jurisdiction when, and only when, the petition for the writ is filed with the court within 60 days from the date of the decision sought to be reviewed, and does not depend on when the petition is allowed or when the writ is issued or when it is served." *Shipp v. Multnomah County*, 133 Or App 583, 589, 891 P2d 1345, *rev den*, 321 Or 246 (1995); *see Clinkscales v. City of Lake Oswego*, 47 Or App 1117, 1120, 615 P2d 1164 (1980) ("[T]he court is vested with jurisdiction over the subject matter when the petitioner, within 60 days of the decision sought to be reviewed, files a verified petition containing the requisite allegations. The court is then authorized to order the writ issued by the clerk, and the court obtains [personal] jurisdiction over the parties served with a copy of the writ."); *see also, e.g.*, *Spivak v. Marriott*, 213 Or App 1, 8-9, 159 P3d 1192 (2007) ("Although the statutes contain a number of procedural requirements, the only jurisdictional requirement is that the plaintiff file the petition within 60 days from the date of the challenged decision."); *id.* at 9 n 6 ("[L]ack of service prevents the court from proceeding further until service occurs; it does not deprive the court of jurisdiction over the petition for a writ of review or over the challenged decision."); *Magar v. City of Portland*, 179 Or App 104, 109, 39 P3d 234 (2002) ("The circuit court here had subject matter jurisdiction because plaintiff satisfied the conditions

listed in ORS 34.040 by filing his petition in the appropriate court within 60 days of the decision sought to be reviewed."); *Shevchynski v. City of Eugene*, 157 Or App 355, 360-61, 970 P2d 237 (1998) (concluding that the court's procedural error in failing to issue the writ is "jurisdictional" only in the sense that it deprives the court of authority to proceed with the review process until the error is remedied, but that it does not deprive the court of subject matter jurisdiction over the petition).

However, relying on two Supreme Court cases from the early twentieth century, *Williams v. Henry*, 70 Or 466, 142 P 337 (1914), and *Maizels v. Kozer*, 129 Or 100, 276 P 277 (1929), appellant argue that failure to timely serve the opposite party deprives the court of subject matter jurisdiction, such that the circuit court's judgment should "be reversed and the County's vesting determination should be reinstated." Consequently, they assert, our prior cases cited above are wrongly decided, and we should overrule them. They contend that, after we overrule those cases, we should conclude that Donald was an opposite party and that the failure to serve him with a copy of the writ within 10 days before its return means that the circuit court lacked subject matter jurisdiction over the petition for writ of review.

We are not convinced that the cases cited above are wrong, let alone "plainly wrong," and, accordingly, we decline to overrule our prior cases. *See State v. Civil*, 283 Or App 395, 415-17, 388 P3d 1185 (2017) (discussing *stare decisis* and concluding that we will overrule a prior decision only if it is "plainly wrong," which is a "rigorous standard" that is "satisfied only in exceptional circumstances"). Given that conclusion, we need not, and do not, decide whether the court's extension of time to serve opposite parties or the filing of the amended petition affected the proceedings or whether Donald is an opposite party.

In several of the cases that appellants ask us to overrule, we have explained that the word "jurisdiction" has multiple meanings. *See, e.g.*, *Shevchynski*, 157 Or App at 360 (explaining that, in previous cases, we used the word "jurisdiction" to refer "simply to the trial court's authority to proceed with the review process"); *cf. Arbaugh v. Y&H*

*Corp.*, 546 US 500, 510, 126 S Ct 1235, 163 L Ed 2d 1097 (2006) ("Jurisdiction, this Court has observed, is a word of many, too many, meanings. This Court, no less than other courts, has sometimes been profligate in its use of the term." (Internal quotation marks and citation omitted.)). In *Spivak*, we explained that, when we said in earlier cases that service on opposite parties is a "jurisdictional" requirement, we were referring to the court's power to proceed with its review, not to its subject matter jurisdiction over the petition or the challenged decision:

> "Before *Shipp*, we had suggested that failing to serve the writ is jurisdictional. *See Thompson v. Columbia County Comm'rs*, 29 Or App 813, 564 P2d 1376 (1977); *N.W. Env. Def. Center v. City Council*, 20 Or App 234, 531 P2d 284 (1975). However, as we later explained, we used 'jurisdiction' in those cases to refer to the trial court's authority to review the challenged decision, not to its jurisdiction over the petition for a writ. *Shevchynski*, 157 Or App at 360. Thus, lack of service prevents the court from proceeding further until service occurs; it does not deprive the court of jurisdiction over the petition for a writ of review or over the challenged decision."

213 Or App at 9 n 6.

Consistently with that explanation, a close read of our case law reveals that we have already concluded that, when the Supreme Court referred to "jurisdiction" in *Maizels* and *Williams*, it did not refer to subject matter jurisdiction. In *N.W. Env. Def. Center*, 20 Or App at 236, the petitioners sought a writ of review of a decision of the Portland City Council. Portland General Electric (PGE) was an opposite party within the meaning of ORS 34.080, but it was not served at least 10 days before the return of the writ. *Id.*; *id.* at 238. The city council moved to quash the writ, and the circuit court granted the motion. *Id.* at 237. The petitioners filed an amended petition and properly served PGE, but the court granted a second motion to quash on the ground that the petition was not timely filed. *Id.* The court then dismissed the proceedings. *Id.*

On appeal, we held that the court had correctly quashed the writ, but our disposition of the case demonstrates

that the court nevertheless had subject matter jurisdiction over the proceeding. First, citing *Maizels* and *Williams*, we held that "failure to serve the 'opposite party' is indeed a jurisdictional defect." *N.W. Env. Def. Center*, 20 Or App at 239. However, we did not understand that "jurisdictional defect"—the same one identified in *Maizels* and *Williams*—to be one of subject matter jurisdiction: We held that, despite the court's lack of "jurisdiction," the grant of a motion to quash "will not deprive a court of its discretionary power to extend time for a return of the writ." That conclusion was based on the fact that the Supreme Court had "recently given a liberal interpretation to certain procedural time requirements involving writs of review." *Id.* at 240 (citing *Meury v. Jarrell*, 269 Or 606, 525 P2d 1286 (1974)). Thus, we reversed the circuit court's grant of the second motion to quash and dismissal of the writ of review proceedings. *Id.* at 242.

If the jurisdictional defect identified in *Maizels* and *Williams*, which was also present in *N.W. Env. Def. Center*, had been one of subject matter jurisdiction, dismissal of the case would have been the only proper action for the circuit court to take. *See Alto*, 319 Or 382 (remanding for dismissal); *Butchart*, 214 Or App at 79 (same). Instead, we held that the circuit court had erred in dismissing the writ of review proceedings. *N.W. Env. Def. Center*, 20 Or App at 242.

*N.W. Env. Def. Center* is one of the cases that we referred to in *Spivak* when we explained that we had used "jurisdiction" "to refer to the trial court's authority to review the challenged decision, not to its jurisdiction over the petition for a writ." 213 Or App at 9 n 6. Although, in *N.W. Env. Def. Center*, we relied on *Maizels* and *Williams* for the proposition that the failure to serve the opposite party is "jurisdictional," our holding makes clear our understanding that, despite the Supreme Court's use of that term in those early cases, a failure to serve the opposite party does not deprive the court of subject matter jurisdiction. *See N.W. Env. Def. Center*, 20 Or App at 240 (relying on the Supreme Court's then-recent case law). In *Spivak*, we made that conclusion explicit: Lack of service "does not deprive the court of jurisdiction over the petition for a writ of review or over the challenged decision." 213 Or App at 9 n 6.

In support of their argument, appellants rely on cases that we decided after *N.W. Env. Def. Center* in which we held that a court must grant a motion to quash the writ if service on all opposite parties has not occurred. *See A & X, Inc. v. Common Council of the City of Eugene, Dahl*, 41 Or App 171, 174-75, 597 P2d 851 (1979); *Thompson*, 29 Or App at 818; *Shanks v. Washington County*, 22 Or App 426, 427-28, 539 P2d 1111 (1975). Our holding in *A & X, Inc.*, is compatible with our understanding in *N.W. Env. Def. Center* that the "jurisdictional" defect was not one of subject matter jurisdiction; although the defective service required the court to grant a motion to quash the writ in that case, we did not hold that the defective service required the court to dismiss the proceedings. *A & X, Inc.*, 41 Or App at 174-75. To the extent that we suggested or held in the other two cases that lack of service on all opposite parties defeated the circuit court's subject matter jurisdiction, as opposed to requiring the court to grant a motion to quash the writ but not affecting the court's subject matter jurisdiction, that reasoning was incompatible with *N.W. Env. Def. Center*, on which we purported to rely in those cases. Consequently, we implicitly disavowed that reasoning in *Shevchynski* and again *Spivak*. Accordingly, we once again disavow that reasoning.

To summarize, for the last 39 years, we have consistently and explicitly held that the only requirement for a court to obtain subject matter jurisdiction over a petition for writ of review is for the petitioner to file a petition within 60 days of the challenged decision. *Spivak*, 213 Or App at 8-9; *Magar*, 179 Or App at 110; *Shipp*, 133 Or App at 589; *Shevchynski*, 157 Or App at 360; *Clinkscales*, 47 Or App at 1120. We have explained that we did not refer to subject matter jurisdiction when we used the word "jurisdiction" in early cases. *Spivak*, 213 Or App at 8-9, 9 n 6; *Shevchynski*, 157 Or App at 360. And we have understood the Supreme Court's use of the word "jurisdiction" in *Maizels* and *Williams* in the same way. *N.W. Env. Def. Center*, 20 Or App at 240 (citing *Meury*, 269 Or 606); *Spivak*, 213 Or App at 9 n 6. We adhere to those cases.

In this case, as noted above, the petition for writ of review was filed within 60 days of the county's decision.

Accordingly, the circuit court had subject matter jurisdiction, and we reject appellants' jurisdictional challenge.

We turn, briefly, to Donald and the county's contention that, even if we conclude that the circuit court had subject matter jurisdiction, the court nevertheless erred in proceeding in the absence of proper service on all opposite parties. Neither Donald nor the county raised that argument below; accordingly, it is not preserved, and we do not address it. *See* ORAP 5.45(1) (requiring preservation of matters assigned as error on appeal).

## II. MEASURE 49 "CLAIMANTS" AND ORDINANCE 823 "APPLICANTS"

Next, we consider the circuit court's conclusion that the county "[e]xceeded its jurisdiction," ORS 34.040(1)(a), when it determined that, under section 5(3) of Measure 49, Steven, Thomas, and Donald have a right to complete a 15-lot subdivision on the Greggs' property. Under these circumstances, we review the circuit court's reversal of the county's determination for errors of law. *See Friends of Yamhill County v. Board of Commissioners*, 351 Or 219, 244, 264 P3d 1265 (2011) (explaining our standard of review of judgments entered on writs of review).

### A. *Facts and Procedural History*

The historical facts appear in the record and are undisputed.[7] In 1966, Glenn, Diane, and Donald Gregg acquired the property at issue. In late 2006 and early 2007, Glenn, Diane, Donald, and Sharlene Gregg obtained two Measure 37 waivers from the state.

In April 2005, Yamhill County issued a Measure 37 waiver that allowed Glenn and Diane Gregg to "make application to subdivide the subject property into 12 lots." In September 2006, the county issued another waiver allowing Glenn and Diane to divide the property into 13 lots. In that second waiver, the Board of Commissioners ordered that "[t]he Measure 37/Ordinance 749 claim of Glenn H. and Diane

---

[7] As discussed below, Donald and the county contend that, as a legal matter, the circuit court erred in considering whether Donald obtained a Measure 37 waiver from Yamhill County. However, they do not dispute that there is evidence in the record on that subject or that it is historically correct.

Gregg in Docket number M37-21B-05 is a valid claim pursuant to Ordinance 749, Section 6(1)(c)" and that "[c]laimant is authorized to make application to subdivide the subject property into 13 lots and, upon the Planning Director's issuance of final subdivision approval, to establish single family dwellings on undeveloped lots, a use permitted on the subject property at the time claimant acquired the property." "Claimant" was identified as "Glenn H. and Diane Gregg."

After they received the state and county waivers, "[t]he Greggs expended approximately $488,255.55 to develop the property, recorded the final subdivision plat for the development, and obtained building permits before Measure 49 became effective on December 6, 2007." *Kleikamp v. Board of County Commissioners*, 240 Or App 57, 61, 246 P3d 56 (2010). Glenn Gregg was the applicant identified on the subdivision application and approval.

"Measure 49 retroactively extinguished previously issued Measure 37 waivers of land use regulations," including the ones at issue in this case. *Friends of Yamhill County*, 351 Or at 224-25. After Measure 49 took effect, Glenn, Donald, and Sharlene Gregg applied to Yamhill County for a determination that, under section 5(3) of Measure 49, the "vested rights pathway," they had a right to complete and continue the subdivision.[8] *Id.* at 225; *see generally id.* at 222-25 (explaining the history and operation of Measures 37 and 49).

The county determined that they did. Kleikamp and FOYC sought a writ of review in the circuit court, and the circuit court affirmed the county's determination. *Kleikamp*, 240 Or App at 62. In December 2008, shortly after the circuit court affirmed the county's determination, Glenn Gregg died.

Kleikamp and FOYC appealed the writ of review judgment, raising "three independent legal bases in support of" their contention that "the reviewing court erred in sustaining the vesting officer's determination that the Greggs have a vested right to complete the residential development." *Id.* at 63. We rejected two of those bases, *id.* at 64,

---

[8] Diane Gregg died in September 2007.

but agreed with the third, which was that, "in all but the most exceptional Measure 49 case, total project cost must be identified before a legal determination concerning vested rights can be made." *Id.* at 65. Because the county had not found the total project cost, and because this was not an exceptional Measure 49 case that required no identification of total project cost, we reversed and remanded the case, noting that, on remand, the county should "determine the extent and general cost of the project to be vested and *** give proper weight to the expenditure ratio factor in the totality of the circumstances of this case." *Id.* at 67 (internal quotation marks omitted). In light of our decision, the circuit court remanded the case to the county in April 2011.

          In January 2014 Steven and Thomas applied to Yamhill County for a new vesting determination. In February 2014, public notice was published that "Docket VEST-34-2008," the original docket number, "is being reviewed by the Yamhill County Department of Planning and Development" and that "[a]n application by Steven Gregg and Thomas Gregg for [the property at issue] has been deemed complete. The application to address the remand order is available for review ***." Interested persons were provided with the same notice; "applicant" was identified as "Steven Gregg & Thomas Gregg."

          In August 2014, the county issued a decision in which it determined that "the applicants" had a right under section 5(3) of Measure 49 to complete and continue the subdivision. With respect to who was an applicant, the decision provided:

> "Applicants: Steven Gregg and Thomas Gregg. NOTE: the original applicants in this case were Glenn H. Gregg, Donald E. Gregg, and Sharlene L. Gregg, and the current applicants are their successors in interest. Use of the term 'applicants' throughout this opinion is a reference to all of these individuals."

The county did not explain its understanding of the legal significance of the fact that the applicants on remand—Steven and Thomas Gregg—were different from the applicants in the initial proceeding—Glenn Gregg, Donald Gregg, and Sharlene Gregg.

In its decision, the county stated that county waivers were "issued to the applicants *** for the subject property" and that the "applicants also received two final waiver orders" from the state.[9] Ultimately, the county determined that "[t]he applicants have demonstrated that their use of the subject property as a 13-lot residential subdivision complies with waivers issued by the State of Oregon and Yamhill County" and that "[t]he applicants have also demonstrated that, on the effective date of Measure 49, they had a common law vested right to complete and continue the use described in the waivers."

As described above, Kleikamp, FOYC, and the state petitioned for a writ of review in the circuit court. After hearing the parties' arguments, the circuit court reversed the county's decision.

Specifically, the circuit court held that the county had incorrectly determined that Steven, Thomas, and Donald were "applicants" under Ordinance 823, which defines "applicant" as "a person who has obtained Measure 37 relief from the Board and the State of Oregon, and has applied to the Department of Planning and Development for a Final County Vesting Decision." Ordinance 823 § 1.01. The court also held that Steven and Thomas were not "claimant[s] that filed a claim under [Measure 37]." Measure 49 § 5(3).[10] In a letter opinion, the court explained that Steven

---

[9]   Regarding the operative county waiver, the county explained that the county had issued a waiver order entitled "In the Matter of an Order Allowing the Measure 37/Ordinance 749 Claim of Glen H. and Diane Gregg to Authorize Uses on the subject Property Allowed When the Current Owner Acquired the Property, Docket M37-21B-05; Amending and Superseding Board Order 05-275."

[10]  Section 5 of Measure 49 provides, in part:

"A claimant that filed a claim under [Measure 37] on or before [June 28, 2007,] is entitled to just compensation as provided in:

"*****

"*****

"(3) A waiver issued before [December 6, 2007,] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on [December 6, 2007,] to complete and continue the use described in the waiver."

The parts of Measure 49 that address previously filed Measure 37 claims, including section 5, were not codified. *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 153 n 3, 238 P3d 1016 (2010), *aff'd*, 351 Or 219, 264 P3d 1265 (2011).

and Thomas were not "applicants" under Ordinance 823 or "claimants[s] that filed a claim under [Measure 37]" under section 5(3) of Measure 49 because, although their father, Glenn Gregg, filed Measure 37 claims and obtained Measure 37 waivers that allowed the proposed subdivision, they did not.

At a subsequent hearing, the court determined that Donald likewise was not an "applicant" under Ordinance 823 because, although he obtained a Measure 37 waiver from the state, he had not "obtained Measure 37 relief from the Board [of Commissioners of Yamhill County]." Ordinance 823 § 1.01 (defining "applicant"). Rather, as stated in the county's decision, the operative Measure 37 waiver from the county granted relief to "Glenn H. and Diane Gregg," not to Donald. Accordingly, the court concluded, the county exceeded its jurisdiction by concluding that Steven, Thomas, and Donald qualified for relief under Ordinance 823 and section 5(3) of Measure 49.[11]

In their second assignments of error, appellants challenge those conclusions. Steven and Thomas challenge the court's reasoning as it applies to them. They contend that, although section 5(3) of Measure 49 provides relief for "[a] claimant that filed a claim" under Measure 37, we should understand it also to apply to people, like Steven and Thomas, who did not file a claim under Measure 37, but whose predecessors in interest did.[12]

Donald and the county challenge the court's reasoning as it applies to Donald, asserting that Donald's "status as a Measure 37 waiver holder and qualified applicant for a vested rights determination" was incontrovertibly established earlier in these proceedings and cannot be relitigated

---

[11] The court reasoned that, because Steven, Thomas, and Donald were not "applicants" or "claimants" within the meaning of the relevant provisions, the county had exceeded its jurisdiction, ORS 34.040 (1)(a), in determining that they were entitled to relief because they lacked "standing." On appeal, appellants do not challenge that aspect of the court's reasoning.

[12] Steven and Thomas also argue that the circuit court erred in concluding that they were not "applicants" under Ordinance 823. Because we conclude that the court was correct that they were not "claimants" under section 5(3) of Measure 49, we need not, and do not, address that argument.

now.[13] Donald and the county also briefly contend that the court improperly ruled on a question of fact by determining that Donald lacked a Measure 37 waiver from the county. *See Alt v. City of Salem*, 306 Or 80, 84, 756 P2d 637 (1988) ("On a Writ of Review, the court will not pass upon questions of fact." (Internal quotation marks omitted.)). However, Donald and the county did not raise that argument below despite the fact that Kleikamp and FOYC argued that the court should rely on Donald's lack of county waiver. Accordingly, it is not preserved, and we do not address it. ORAP 5.45(1) (requiring preservation).

B.  *Steven and Thomas do not qualify for relief under section 5(3) of Measure 49.*

      We begin by considering the court's reasoning with respect to Steven and Thomas. As relevant here, Steven and Thomas contend that they qualify for relief under section 5(3) of Measure 49, and the circuit court erred in concluding otherwise.

      The circuit court concluded that neither Steven nor Thomas can qualify for "just compensation" under section 5(3) of Measure 49 because neither Steven nor Thomas was "[a] claimant that filed a claim under [Measure 37] on or before [June 28, 2007.]" Measure 49 § 5(3). Thus, the court concluded, although Steven and Thomas might be able to establish, in a separate proceeding under the common law, that, before his death, Glenn Gregg obtained a common law vested right to complete and continue the subdivision, and that that vested right was transferred to them upon his death, they cannot qualify for relief under section 5(3) of Measure 49. *See Oregon Shores*, 297 Or App at 276 (explaining that section 5(3) of Measure 49 provides a statutory right to relief; although one element of the statutory claim under section 5(3) is the existence, on December 6, 2007, of a common law vested right to complete or continue the use, the

---

[13] Donald and the county assert that the county's second vesting determination, the subsequent writ-of-review litigation, and this appeal are all part of the same proceeding as the original vesting determination, writ-of-review litigation, and previous appeal. We need not, and do not, address that contention.

section 5(3) claim itself is "fundamentally different" from a common law claim based on a vested right).[14]

On appeal, Steven and Thomas contend, as described earlier, that the text quoted above should not be understood to require a Measure 49 claimant to be the same person "that filed a claim under [Measure 37] on or before [June 28, 2007.]" In support of that contention, they cite a provision enacted in 2007 that applied to Measure 37 claims during a special extension of the claims review process, ORS 197.353(3), and a provision of Measure 49 regarding calculation of a claimant's acquisition date, ORS 195.328(1) (2011), *amended by* Or Laws 2011, ch 612, § 1.[15]

That argument is defeated by the text of section 5(3) itself: The text unambiguously requires that, to obtain relief under section 5(3), a claimant must be a person "that filed a claim under [Measure 37]." *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining framework for interpreting statutes; "[t]he first step remains an examination of text and context"); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) ("[T]he text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent.").

---

[14] In their reply brief, Steven and Thomas argue that Ordinance 823 allowed them to apply for a determination that such a vested right exists and argue that the circuit court erred in concluding that such a right was not at issue here. However, they did not raise that argument before the circuit court, and they have raised it on appeal for the first time in their reply brief. Consequently, we do not consider it. *See* ORAP 5.45(1) (requiring preservation); *Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 608, 84 P3d 147 (2004) ("We generally will not consider a basis as to why the trial court erred that was not assigned as error in the opening brief but was raised for the first time by way of reply brief.").

[15] ORS 197.353(3) provides:

"If a claimant is an individual, the ability to make or prosecute a Measure 37 claim is not affected by the death of the claimant during the extended review period provided by subsection (2) of this section, and the ability to make or prosecute a Measure 37 claim for property that belonged to the claimant passes to the person who acquires the property by devise or by operation of law."

ORS 195.328(1) (2011) provided:

"Except as provided in this section, a claimant's acquisition date is the date the claimant became the owner of the property as shown in the deed records of the county in which the property is located. If there is more than one claimant for the same property under the same claim and the claimants have different acquisition dates, the acquisition date is the earliest of those dates."

The provisions that Steven and Thomas cite show that the 2007 Legislative Assembly was aware that there was uncertainty about the transferability of Measure 37 and 49 claims between family members. If those provisions have any effect on our analysis, it is to make the textual requirement even clearer; the existence of those provisions suggests that, if the drafters of Measure 49, the legislators who passed it and referred it to the voters, or the voters who adopted it had intended the term "claimant" in section 5(3) to encompass people other than those who had filed Measure 37 claims, some indication of that intention would appear in the text. Instead, section 5(3) expressly requires the "claimant" to be a person "that filed a claim under [Measure 37]."

Given that express requirement, we cannot conclude that the drafters, the legislature, or the voters who enacted Measure 49, intended otherwise. *See* ORS 174.010 (in construing statutes, we must not "insert what has been omitted" or "omit what has been inserted"). The circuit court did not err in concluding that Steven and Thomas could not obtain relief under section 5(3) of Measure 49 because neither of them "filed a claim under [Measure 37]."

C.   *Donald and the county have not shown that the circuit court erred in concluding that Donald was not an applicant under Ordinance 823.*

We turn to Donald and the county's contention that Donald's "status as a Measure 37 waiver holder and qualified applicant [under Ordinance 823] for a vested rights determination" was incontrovertibly established earlier in these proceedings and cannot be relitigated now. Donald and the county first argue that the Supreme Court's holding in *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), applies here and precluded the county on remand, and the circuit court in the writ of review proceeding, from considering anything beyond "the extent and general cost of the project to be vested" and the proper weight of "the expenditure ratio factor in the totality of the circumstances of this case." *Kleikamp*, 240 Or App at 67.

At the outset of the Supreme Court's opinion in *Beck*, the court explained the issue before it:

"This case concerns the scope of judicial review of a decision of the Land Use Board of Appeals (LUBA). Specifically, the issue is this: When petitioners appealed a local land use decision to LUBA and prevailed only in part, obtaining a remand, did the applicable statutes require them to seek judicial review of the legal issues that LUBA decided against them at that time, or could they wait until after the remand and a second appeal to LUBA to do so?"

313 Or at 150. Consistently with those opening sentences, the court in *Beck* addressed the statutes that govern LUBA's review of local land use decisions. *Id.* at 152-54 (addressing "four pertinent statutes": ORS 197.835(9) (governing scope of review of LUBA orders); ORS 197.850, *amended by* Or Laws 2019, ch 221, § 2 (establishing procedures for judicial review of LUBA decisions); ORS 197.763(7) (establishing procedure for reopening the record in "quasi-judicial land use hearings *** on an application for a land use decision"); and ORS 197.830(10) (providing for transmission of record to LUBA)).

Based exclusively on the text of those statutes, the court concluded that, when a record is reopened on remand from LUBA, "the parties may not raise old, resolved issues again," and "issues that LUBA affirmed or reversed on their merits" are old, resolved issues. *Beck*, 313 Or at 153. In response to the petitioners' arguments that that holding was "poor policy," the court explained, "the statutes contemplate the procedure that petitioners challenge; the legislature already has weighed the competing policies and chosen one that defeats petitioners' position." *Id.* at 154.

Thus, the court's holding in *Beck*, and all of its reasoning, was specific to LUBA and based on the statutes governing LUBA's review of land use decisions. Those statutes do not apply to writ of review proceedings. Thus, contrary to Donald and the county's argument in this case, *Beck* has no application in the writ of review context.[16]

Donald and the county also argue that Kleikamp and FOYC made a judicial admission that Donald Gregg had a Measure 37 waiver from Yamhill County when they

---

[16] Donald and the county note that the principle established in *Beck* is "akin to the law of the case doctrine," but we do not understand them to argue that the law of the case doctrine applies here.

stated, in their opening brief in the first appeal, "In 2006 and 2007, Intervenors [Glenn H., Donald E. and Sharlene L. Gregg] obtained Measure 37 (*former* ORS 197.352) 'waivers' from Yamhill County and the State of Oregon." Putting aside the fact that the state was not a party to the first appeal and the question of whether a party judicially admits a fact by stating it in an appellate brief,[17] we reject that argument because we disagree with Donald and the county's understanding that the statement in Kleikamp and FOYC's opening brief constituted an admission that Donald obtained a Measure 37 waiver from Yamhill County.

As explained above, Glenn Gregg was among those who applied in 2008 for a vesting determination by the county. In its comments on the application, FOYC understood Glenn Gregg alone to be the "claimant" and noted that "[t]he county [Measure 37] waiver authorized Glenn and Diane Gregg and only Glenn and Diane Gregg to construct dwellings on the lots." Thus, before the county, FOYC did not concede or agree that Donald Gregg had obtained a county Measure 37 waiver.

Because the record before us does not include the parties' briefing before the first writ-of-review court, we do not know what Kleikamp and FOYC argued on the writ of review. In its letter opinion, however, the court noted that "there is an issue as to who is the claimant" in the Gregg case, and that "Sharlene and Donald Gregg may not qualify" as claimants. The court did not resolve factual issues about who was a claimant, however, because "it would not appear to make any difference in the outcome, so long as one of the current landowners was qualified under Measure 37."[18]

---

[17]  We have explained that

"'a judicial admission is a formal concession in pleadings or stipulations that withdraws a fact from issue[,]' *State v. Anderson*, 137 Or App 36, 42, 902 P2d 1206 (1995) (citing John W. Strong ed., 2 *McCormick on Evidence* § 254, 142 (4th ed 1992)), and is made 'for the purpose of dispensing with proof of a fact in issue.' *Foxton v. Woodmansee*, 236 Or 271, 278, 386 P2d 659 (1963); *see also Garvin v. Western Cooperage Co.*, 94 Or 487, 499-500, 184 P 555 (1919) (so holding)."

*Great Seneca Financial Corp. v. Lisher*, 223 Or App 496, 500, 196 P3d 86 (2008).

[18]  The court referred to the potential problem with whether Donald and Sharlene Gregg were applicants as relating to their acquisition date rather than

That is, as we understand it, the first writ-of-review court concluded that it did not need to resolve factual issues regarding who was a claimant, because, in its view, its analytical task was to consider whether the applicants for the vesting decision, considered as a unit, had shown a vested right to complete and continue the subdivision. Because there was no dispute that Glenn qualified as a "claimant" under section 5(3) of Measure 49, the applicants qualified as a unit, and it was immaterial whether Donald also qualified.

On appeal, Kleikamp and FOYC acquiesced in the writ-of-review court's view of the legal analysis. Thus, they treated Glenn, Diane, and Donald Gregg as a unit that they identified as "Intervenors." In their statement of the facts, they stated, as Donald points out, that "Intervenors obtained Measure 37 'waivers' from Yamhill County." In our opinion, we likewise treated "the Greggs" as a unit. *See, e.g.*, *Kleikamp*, 240 Or App at 61 ("The Greggs expended approximately $488,255.55 to develop the property, recorded the final subdivision plat, and obtained building permits before Measure 49 became effective on December 6, 2007.").

Acquiescing in the circuit court's treatment of Glenn, Diane, and Donald Gregg, as a unit is different from admitting that Donald had a Measure 37 waiver from the county. It was, and remains, undisputed the Glenn Gregg had the necessary Measure 37 waivers. If, as the first writ of review court held, the relevant question is whether the applicants, considered as a unit, are entitled to relief under section 5(3) of Measure 49, then that court was correct that it was immaterial whether Donald had a county waiver, and there was no reason for the court to address the factual dispute. Likewise, the question was immaterial to the appeal, and there was no need for Kleikamp or FOYC to address it. Thus, even if the sentence on which Donald and the county rely is an "admission" that the Greggs, as a unit, had the

---

whether they obtained county waivers. (In the same footnote, the court also referred to a similar problem with one applicant in another of the four cases that the letter opinion addressed.) As we explain in the text, however, the court's conclusion—that it need not resolve any factual issues regarding who was a claimant because it was undisputed that Glenn Gregg qualified—made any further argument about Donald's status as a waiver holder immaterial.

necessary Measure 37 waivers, it is not an admission that Donald had a county Measure 37 waiver.

Nor is the position that Kleikamp and FOYC took in the first appeal inconsistent with their position here. There, the writ-of-review court reasoned, and Kleikamp and FOYC did not challenge, that Glenn Gregg's undisputed status as a "claimant that filed a claim under [Measure 37]" qualified the unit of "the Greggs" for relief under section 5(3) of Measure 49 (if the Greggs also met the other requirements of that subsection). Here, Kleikamp and FOYC do not repudiate the view that "the Greggs," as a unit, can qualify for relief under section 5(3) of Measure 49. Instead, after Steven and Thomas submitted a second application, Kleikamp and FOYC asserted, and the circuit court concluded, that, because Glenn Gregg was no longer living, Glenn Gregg's status as a Measure 37 claimant no longer entitled "the Greggs," as a unit—now a unit including Steven and Thomas, rather than Glenn and Diane—to relief. *Cf. DLCD v. Jefferson County*, 220 Or App 518, 524, 188 P3d 313 (2008) (holding that a statute requiring application of the legal criteria in effect when a land-use application is filed did not apply when the original applicant died and a new applicant was substituted because facts about the new applicant "caused existing laws to operate differently than they would have" if the substitution had not occurred).

Because the limitations of *Beck* do not apply in this context, and because Kleikamp and FOYC did not judicially admit in the first appeal that Donald had a county Measure 37 waiver, we reject Donald and the county's arguments that the circuit court was precluded from considering whether Donald had a Measure 37 waiver from the county.

Affirmed on appeal and cross-appeal.