Argued and submitted July 22, 2020, reversed and remanded
November 10, 2021

WILSONVILLE SUBARU,
*Petitioner below,*
*and*

DJ & BL ENTERPRISES, INC.,
dba Wilsonville Subaru;
BL & DJ, LLC; and
Lanphere Construction and Development, LLC,
*Petitioners-Appellants,*
*v.*

CITY OF WILSONVILLE,
*Respondent-Respondent.*

Clackamas County Circuit Court
17CV39604; A170052

502 P3d 1136

Petitioners appeal from a judgment affirming the Wilsonville City Council's dismissal of petitioners' appeal as untimely. Petitioners paid System Development Charges (SDCs) to respondent, the City of Wilsonville, as a condition of development for a Subaru dealership. Petitioners later sought reimbursement of those SDCs by appealing to the city council, contending that Wilsonville City Code (WC) 11.040(5)(e) granted petitioners a right to request reimbursement of the SDCs after the dealership began operations. The city council rejected petitioners' construction of subsection (5)(e) and dismissed the appeal, concluding that petitioners appeal was untimely under WC 11.040(10) because petitioners had waited more than 10 days after the final SDC assessment to challenge the amount of the SDCs. The circuit court affirmed the dismissal in a writ of review proceeding. On appeal, the issue is whether the city council correctly construed and applied WC 11.040(5)(e) and (10). *Held*: The city council correctly construed and applied the applicable law. Subsection (5)(e) does not grant developers a right to request reimbursement after SDCs for a development have been paid and the development has been constructed. Further, petitioners appealed to the city council well after 10 days from the date of the final SDC assessment and the city council correctly applied subsection (10) in dismissing the appeal as untimely. However, the Court of Appeals reversed and remanded for further proceedings due to a procedural issue.

Reversed and remanded.

Thomas J. Rastetter, Judge.

Jeff Bachrach argued the cause for appellants. On the briefs was Christine N. Moore.

Amanda R. Guile-Hinman argued the cause for respondent. Also on the brief was Barbara A. Jacobson.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

In this appeal from a writ of review proceeding, the issue is whether the Wilsonville City Council erred in dismissing petitioners' appeal as untimely. Petitioners (developers) are the developers of a Subaru dealership in Wilsonville. As a condition of development, the developers paid System Development Charges (SDCs) that were assessed by respondent, the City of Wilsonville (city). The developers later appealed to the Wilsonville City Council, seeking reimbursement of those SDCs. The city council dismissed the appeal and the circuit court affirmed. The developers appeal from the circuit court's judgment, contending that the court erred in concluding that the city council correctly construed the law applicable to the developers' appeal of the SDCs. We conclude that the circuit court did not err in denying summary judgment to the developers, because their appeal to the city council was correctly dismissed as untimely. However, based on a procedural quirk present in this case, we must reverse and remand for further proceedings.

Because this case concerns a dispute over SDCs, we discuss SDCs and the SDC ordinances applicable to the developers' appeal. For new developments and construction, the city requires developers to pay SDCs to compensate the city for the projected impacts of new development on city infrastructure. Wilsonville City Code (WC) 11.040 sets forth the process for the calculation, assessment, and payment of SDCs. The city uses standard methodologies to determine SDCs. Unless the city agrees to defer payment, SDCs must be paid in full on the date that the city issues the building permit for the development. In this case, the parties dispute the applicability and meaning of two subsections of WC 11.040: WC 11.040(10),[1] which allows appeals of decisions made under WC 11.040 to the city council and provides that those appeals must be filed within 10 days of the decision being appealed, and WC 11.040(5)(e), which states that the community development director may approve "alternative

---

[1] Chapter 11 of the Wilsonville City Code has been amended since the events at issue in this case. All references and citations to WC 11.040(1) through (11) are to the earlier version of chapter 11 in effect at the time of the relevant events and legal proceedings.

fee calculations" for developments presenting "special or unique situation[s] such that the calculated fee is grossly disproportionate to the actual impact of the development."

We turn to the facts, which we recite based on the record before the city council. *Spivak v. Marriott*, 213 Or App 1, 12, 159 P3d 1192 (2007) (in writ of review proceeding, review "is based on the record returned by the inferior tribunal"). Between 2015 and 2017, the developers developed and constructed a Subaru dealership in Wilsonville. Prior to the final SDC calculation, the developers corresponded with city employees concerning the charges and received an estimate of the SDCs. The Systems Development Review Board also held a hearing where it presented the conditions of approval for the proposed development, including the estimated SDCs. On December 1, 2015, the developers met with the Wilsonville Community Development Director to discuss deferring payment of the SDCs. In a letter following that meeting the developers wrote, "We do understand that the SDC's are required and we will sign an agreement to pay them prior to any certificate of occupancy handed over by the City."

The city issued the developers' building permit on December 9, 2015. The building permit stated that the developers owed $1,098,094.63 in SDCs and fees. Several days later, the developers and the city entered a Deferral Agreement, which allowed the developers to defer payment of $1,007,374.29 of the SDCs until June 2016. The agreement stated that "[n]othing in this Agreement shall be construed as a waiver of rights by either party with respect to any appeal that Applicant may make of the SDC charges. Any such appeal must be timely filed in accordance with all legal requirements." That agreement was later extended through October 2016, at which point the developers paid the SDCs in full.

At the end of 2016, the Subaru dealership began operations. After the dealership opened for business, the developers hired an engineer to assess the dealership's impacts on city infrastructure. Based on that engineer's findings, on February 21, 2017, the developers sent a letter to the Wilsonville City Manager, requesting substantial

reimbursement of the SDCs. The letter explained that
"[p]ursuant to Wilsonville Code (WC) 11.030" the developers
were requesting "an adjustment to and reimbursement of"
the SDCs the developers paid "as a condition of the City's
issuance of a building permit for the Wilsonville Subaru
dealership." In particular, the developers alleged that the
standard "Street SDC" assessment was "based on a car
dealership generating an average of 10,204 vehicle trips per
week," which was a "demonstrably inaccurate trip projec-
tion for the Wilsonville Subaru dealership." According to
the developers, "a site-specific trip generation analysis" by
their engineer estimated that "the Wilsonville Subaru site
[would] generate an average of 2,389 vehicle trips per week."
The developers also took issue with the methodology used
to calculate the "Stormwater SDC" and their payment of a
"Parks SDC."

        The Wilsonville City Attorney responded to the
developers' February 21 letter in a letter on March 15, 2017.
In the March 15 letter, the city attorney informed the devel-
opers that

> "under Wilsonville Code (WC) 11.040(10)(c), a party who
> wishes to appeal a decision regarding the amount of SDCs
> assessed must do so within ten (10) working days of the
> date of the decision. Additionally, any party is free to raise
> objections to any proposed conditions of approval at the
> Development Review Board hearing."

The city attorney noted that, at the development review
board hearing for the Subaru dealership, "all of [the SDC]
conditions were presented and imposed" and the developers'
"applicant representative" was present and "raised no objec-
tion to any condition." And, according to the city attorney,
because the building permit for the project was issued on
December 9, 2015, "[t]he time period to challenge the SDCs
ha[d] passed," and the developers' challenge to the SDCs
was time-barred.

        The city attorney sent another letter to the devel-
opers later that month. She again stated that the 10-day
appeal period began to run on the date that the build-
ing permit was issued. The city attorney also noted that
her March 15 letter was her legal opinion concerning the

timeliness of the developers' reimbursement request, not a "memorialization of the City Manager's decision." She explained that "WC 11.030 does not govern SDCs" and that "WC 11.040 addresses [SDCs], which are not defined as fees, and 11.040(10), unlike 11.030, specifically speaks to the SDC appeal process and timelines." She invited the developers to speak with the city's community development director but did not "represent that [would] change anything."

The community development director held an in-person meeting with the developers' engineer in April. Following that meeting, the community development director sent a letter to the developers' engineer on May 24, 2017. She reminded the engineer that the developers had missed the deadline for appealing the SDC assessment. She also explained that, even if the reimbursement request had been timely, the city "would have rejected the adjustment requests," and that "the data presented to support the [Street SDC] request [was] not compatible [with the] City's adopted methodology." The community development director clarified that she reviewed the engineer's report as "a courtesy only" and not "as any re-opening or reconsideration of [her] original decision" concerning the SDC amounts and that her letter "shall not be construed as a re-assessment" of the decision.

The engineer responded to the community development director's May 24 letter in a memorandum. The engineer explained that his firm intended to collect additional data that would be compatible with the city's methodology and that "[a]ccurate data collection * * * would not have been possible prior to the dealership being fully operational."

The developers filed a petition for appeal with the city council on June 7, 2017. In the petition, the developers argued that their February 21 letter was a request for reimbursement under WC 11.040(5)(e), and that the community development director's May 24 letter was the formal rejection of that request that gave rise to the developers' appeal. In other words, the developers argued that they were not appealing the SDC assessment, which occurred on December 9, 2015, when the city issued the building permit. Instead, the developers argued that they were appealing

the rejection of their (5)(e) request that they raised in the February 21 letter and that the city rejected in the May 24 letter.

According to the developers, WC 11.040(5)(e) granted a right "to request a recalculation of the SDC charges and a reimbursement of fees paid after a project is complete and occupied if there is a large enough disparity" between the SDC charges "and the actual impact of the development." The developers asserted that they could not have raised any request under (5)(e) until after the dealership had begun operations, that is, until the developers had the opportunity to measure the "actual impacts" of the dealership. In fact, the developers argued, no time limitations applied to requests made under (5)(e) at all. Therefore, in the developers' view, their challenge was not limited by the 10-day appeal period in WC 11.040(10) as the community development director concluded in her letter.

The city attorney responded to the developers' arguments in a memorandum to the city council. The city attorney maintained that the developers' appeal was not timely filed, and that WC 11.040(10) was the provision that applied to the timeliness issue. She contended that the developers had misconstrued WC 11.040(5)(e), which did not grant businesses a right to challenge SDCs after beginning operations. Instead, subsection (5)(e) pertained to the SDC calculation process prior to the final assessment and the issuance of the building permit. The city attorney wrote that the only issues before the city council were whether the appeal was timely filed, and if so, whether the appeal included all of the required minimum criteria.

The city council then discussed the appeal at a council meeting. In addition to the letters and memoranda described above, the relevant materials before the council included a declaration by the community development director. The community development director explained that she had

"worked with many developers to go over the SDCs before the final number was set, and in the course of those negotiations [she had] often made modifications if good arguments were raised in support of a change, but that process

> ha[d] always occurred in accordance with Chapter 11 con-
> sultation and well before [her] final determination upon
> the issuance of the building permit. \*\*\* [She had] never
> had a developer fail to raise concerns, sign the final SDC
> calculation as attached to the building permit, and then
> come back two years after the fact to appeal [her] decision."

After some discussion concerning the arguments of the
developers and the city attorney, the city council dismissed
the developers' appeal of the SDC charges on the basis that
it was untimely under WC 11.040(10) "as outlined in the doc-
uments" before the council.

   The developers petitioned for a writ of review, seek-
ing review of the city council's decision dismissing their
appeal. The developers alleged that, in dismissing their
appeal as untimely, the city council had made three kinds of
errors: (1) It improperly construed WC 11.040; (2) it failed to
follow the procedures applicable to the appeal; and (3) it made
an order not supported by substantial evidence in the whole
record. ORS 34.040(1). The developers contended that the
"resolution of the parties' dispute in this case will be deter-
mined by the Court's interpretation of the City Code, in par-
ticular, the reimbursement provisions in WC[] 11.040(5)(e)
and the appeal procedures in WC[] 11.040(10)."

   The developers moved for summary judgment, argu-
ing, as they did before the city council, that WC 11.040(5)(e)
grants a right to seek reimbursement of SDCs to businesses
after beginning operations. That right, according to the
developers, was not time-limited by WC 11.040(10) because
the "actual impact" of a business can only be measured after
a business has occupied the development and begun opera-
tions, which necessarily occurs well past the time limitation
established by WC 11.040(10)—10 days beginning on the
issuance of the building permit. The developers further con-
tended that their appeal to the city council was not untimely
because subsection (10) specifically applied to appeals to the
city council and the developers' February 21 letter was not
an appeal, but an "initiation of their claim under [subsec-
tion] 5(e)."

   The city filed a memorandum in opposition to the
developers' summary judgment motion, arguing that the

developers had incorrectly construed WC 11.040(5)(e). The city explained that, after approval by the systems development review board, the community development director works with staff to calculate the SDCs using standard methodologies adopted under WC 11.040(5). During the calculation period, a developer may request an alternative calculation under subsection (5)(e) but may not do so after the issuance of the building permit, which is the date of the final assessment of the SDCs. According to the city, a developer who wishes to contest SDCs after issuance of the building permit must file an appeal to the city council within 10 days after that date under WC 11.040(10).

        The city also filed a cross-motion for summary judgment. The sole basis for the city's cross-motion was its argument that the developers had not raised a subsection (5)(e) "claim." The city contended that the developers had never raised a subsection (5)(e) claim because the developers had not cited subsection (5)(e) or used the key language of that subsection in any correspondence with the city prior to the appeal. Because the developers had never raised subsection (5)(e), the city argued, the developers could not prevail on their assertions that the city had erroneously interpreted subsection (5)(e), misapplied the procedures applicable to subsection (5)(e), or made an order not supported by substantial evidence when it dismissed the developers' appeal under subsection (10). In other words, the city contended that the developers failed to establish any error related to the city's handling of their purported request under subsection (5)(e), because the developers had not met their burden of proving that they ever made such a request.

        After hearing argument from the parties, the trial court denied the developers' motion "for the reasons stated by the City." The court ruled that the developers were "not entitled to judgment as a matter of law, [and] that the applicable ordinance for reconsideration or appeal of an SDC is sub[section] (10) and not sub[section] (5)(e)." The court also granted the city's cross-motion for summary judgment "on the ground[] that no (5)(e) claim was ever made."

        The developers appealed, assigning error to the trial court's denial of their motion for summary judgment and

grant of the city's cross-motion. "[W]e review the trial court's affirmance of the [city council's] determination for errors of law; that is, we ask whether the trial court correctly applied ORS 34.040[(1)]." *Davis v. Jefferson County*, 239 Or App 564, 571, 245 P3d 665 (2010). The parties raise substantially the same arguments on appeal as they did in their cross-motions. We discuss additional details of those arguments below in our analysis. First, we clarify the applicable standards in a writ of review proceeding and the dispositive issue on appeal.

Writ of review proceedings are governed by ORS 34.010 through 34.102. Those statutes grant circuit courts limited authority to review certain judicial and quasi-judicial decisions, including those of local governing bodies like the Wilsonville City Council. Under ORS 34.040(1) a decision is subject to review if the decision-making body "appears to have"

"(a)  Exceeded its jurisdiction;

"(b)  Failed to follow the procedure applicable to the matter before it;

"(c)  Made a finding or order not supported by substantial evidence in the whole record;

"(d)  Improperly construed the applicable law; or

"(e)  Rendered a decision that is unconstitutional."

Thus a circuit court, "in a writ of review proceeding, may review the jurisdictional, procedural, legal and constitutional bases of the challenged decision. It may also determine whether the decision is supported by substantial evidence. *** In making these determinations, the reviewing court reviews the record and does not take new evidence." *Alt v. City of Salem*, 306 Or 80, 84, 756 P2d 637 (1988). In other words, in a writ of review proceeding the circuit court's "review is appellate." *Spivak*, 213 Or App at 12.

Here, the challenged decision was the city council's decision to dismiss the developers' appeal as untimely under WC 11.040(10). Therefore, the circuit court's task was to review that decision. More specifically, the court's task was to review the particular claimed errors underpinning that

decision as alleged by the developers in their petition for a writ of review. At the core of each of those claimed errors is the developers' contention that their February 21 letter was a request for reimbursement under WC 11.040(5)(e), which grants businesses a right to request reimbursement of SDCs after beginning operations. Accordingly, the developers assert that their appeal to the city council was an appeal of the denial of their subsection (5)(e) request in the community development director's May 24 letter, and not an appeal of the final assessment of the SDCs that occurred on the issuance of the building permit. Because the developers appealed within 10 days of the May 24 letter, in the developers' view, their appeal to the city council was timely under subsection (10).

Given the developers' arguments in this case, the dispositive issue is whether the city council correctly rejected the developers' construction of subsection (5)(e). That is so, because when the city council determined that the developers' appeal was untimely, the council necessarily concluded that WC 11.040(10) applied to the developers' appeal, and rejected their construction of WC 11.040(5)(e). If WC 11.040(5)(e) does not grant a right to request reimbursement after the final assessment of the SDCs, as the developers contend, there is no question that the developers' appeal was untimely under WC 11.040(10). That is, absent the purported rejection of their subsection (5)(e) request, there was only one appealable "decision" under subsection (10), the final assessment of the SDCs. There is no dispute that the final assessment occurred in December 2015, over a year before the developers' appeal.

Further, the developers' additional claimed errors that the city failed to follow the applicable procedures and made an order not supported by evidence both collapse if subsection (10) applied to the appeal. Subsection (10)(d) provides that untimely appeals "shall be dismissed," and the city complied with that procedure. And, as is clear from our recitation of the facts, there is substantial evidence to support the city's conclusion that the developers brought their appeal more than 10 days from the issuance of the building permit. We turn to our analysis of WC 11.040(5)(e).

"The proper construction of a municipal ordinance is a question of law, which we resolve using the same rules of construction that we use to interpret statutes." *City of Eugene v. Comcast of Oregon II, Inc.*, 359 Or 528, 540, 375 P3d 446 (2016). Therefore, "we look primarily to the ordinance's text, context, and legislative history, although we may look also to general rules of statutory construction as helpful." *Id.* at 540-41 (internal quotation marks and brackets omitted). In construing a statute or ordinance, our "paramount goal" is to discern the legislative body's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009).

We conclude that WC 11.040(5)(e) does not grant developers a right to request reimbursement after the final SDC assessment and the expiration of the limitations period in WC 11.040(10). Consequently, we also conclude that WC 11.040(10) applied to the developers' SDC challenge and that the city council did not err in dismissing the developers' appeal as untimely, for the reasons explained above. We begin by analyzing the text and context of WC 11.040(5)(e). As noted, that subsection provides:

> "The formulas and calculations used to compute specific SDC's are based upon averages and typical conditions. Whenever the impact of individual developments present special or unique situation[s] such that the calculated fee is grossly disproportionate to the actual impact of the development, alternative fee calculations may be approved or required by the Community Development Director under prescribed administrative procedures. All data submitted to support alternate calculations under this provision shall be specific to the site and development under consideration. Major or unique developments may require special analyses to determine alternatives to the standard methodology."

As we understand subsection (5)(e), it provides authority to the community development director to approve or require alternative fee calculations when a development is "special or unique" such that the standard methodology is not likely to accurately estimate the projected costs of the capital improvements. Under our reading, "actual impact" refers to the impact of the development site or proposal accounting for the "special or unique" situation. That is, "actual" is used to delineate between the projected impact

taking the special or unique factors into consideration as opposed to the projected impact calculated based on the "averages and typical conditions."

That construction works in harmony with the entirety of subsection (5)(e). The phrase "under consideration," necessarily refers to developments in the process of obtaining city approval, not those that have already completed the development process with the city. Similarly, "special or unique situation[s]" in developments are likely to be features of the development site or proposal that are identifiable before construction and operations begin. And, as a general matter, subsection (5)(e) says nothing about "reimbursements," only alternative "calculations." *See* ORS 174.010. That cuts against the developers' argument that subsection (5)(e) grants a right to request reimbursement.

In asserting their interpretation, the developers largely focus on the text in the second sentence. The developers assert that the phrase "actual impact," as used in that sentence, refers to the "real impact" of a development "after completion of construction." The developers also argue that the use of "whenever" means that recalculations may be made "at any time" that the assessed SDC "proves to be grossly disproportionate" to the impact of the development, including after the development is completed. The developers rely on the dictionary definitions of "actual," "impact," and "whenever" to illustrate those points, but considering the dictionary definitions in isolation does little to clarify the plain meaning of the ordinance.

Indeed, the developers' interpretation fails to account for the relevant context. "We are not to determine the meaning of rules and statutes merely by analyzing their meanings in the abstract." *Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 352 Or 583, 595, 288 P3d 958 (2012). Rather, "we construe each part together with the other parts in an attempt to produce a harmonious whole." *Id*. When we consider the terms of the ordinance in the context of the ordinance as a whole and in context with other subsections of WC 11.040, we conclude that the Wilsonville City Council likely intended for WC 11.040(5)(e) to provide for potential alternative fee calculations during the initial

SDC calculation process, not after the developer has paid the assessed SDCs and started operations.

Significantly, the developers' construction would be out of place in subsection (5) of WC 11.040, which is titled "Methodology." That subsection creates certain criteria for the methodologies used to calculate SDCs. For example, subsections (5)(a) and (b) describe the particular costs that methodologies must consider, and subsection (5)(d) provides that the methodologies used to calculate SDCs must be adopted by resolution of the city council. Subsection (5) addresses a stage of the SDC calculation process that occurs before the final SDC determination for a particular development—and well before that development has been constructed and begun operations.

The developers' interpretation creates uncertainty and conflict with other sections of WC 11.040 as well. For example, WC 11.040(7) requires SDCs to be paid at issuance of the building permit and WC 11.040(11) provides that a development cannot connect to water or sewage unless the appropriate SDCs are paid. Those provisions demonstrate that the drafters of the code prioritized securing payment *before* construction. A right to request reimbursement with no time limitation is contrary to that expressed intent. And, as noted, subsection (10) sets forth the "Appeal Procedures" for persons "aggrieved by a decision required or permitted to be made * * * under Section 11.040(1) through (11)," which is the entirety of WC 11.040. The "decision[s]" falling under this subsection would necessarily include the calculation and assessment of SDCs. Further, the procedures in subsection (10) are clear and precise, but no clear procedure exists for asserting the alleged right to request reimbursement.

In sum, we reject the developers' construction of subsection (5)(e) and conclude that it does not grant businesses a right to request reimbursement of SDCs after completing construction and beginning operations.[2] As noted, the trial court concluded, in denying summary judgment to

---

[2] The parties don't develop arguments as to whether the city's interpretation of the city ordinance is entitled to deference. Regardless, this is not a case in which giving deference would affect the outcome and we express no opinion on that question.

the developers, that WC 11.040(10) applied to the developers' challenge to the SDC amount, not WC 11.040(5)(e). We conclude that the trial court did not err in reaching that conclusion or in denying summary judgment to the developers on that basis.

However, we cannot affirm the judgment because the court granted summary judgment to the city—and entered the judgment of dismissal—on the specific ground that the developers did not raise a subsection (5)(e) claim. Whether or not the developers raised a "claim" under subsection (5)(e)—whether as historical fact or as a matter of law—is of no consequence, because subsection (5)(e) does not set out a separate claim process; rather, it is part and parcel of the original SDC calculation. Once that calculation was final, the developers' only course of action was to pursue an appeal under subsection (10). Because the developers' appeal under that subsection was untimely—under any version of the facts arguing the date on which the SDC calculation was final—the city would be entitled to a judgment in its favor on the merits of the writ. However, because the city did not seek summary judgment on the basis that the developers' appeal was untimely under subsection (10) and the court did not enter a judgment for the city on that basis, we must reverse and remand to the trial court for further proceedings consistent with this opinion.[3] *See Two Two v. Fujitec America, Inc.*, 355 Or 319, 326, 325 P3d 707 (2014) ("Parties seeking summary judgment must raise by motion the issues on which they contend they are entitled to prevail as a matter of law. Parties opposing summary judgment have the burden of producing evidence that creates a material issue of fact as to those issues, but only as to those issues."); *Eklof v. Steward*, 360 Or 717, 735-36, 385 P3d 1074 (2016) (reversing Court of Appeals' opinion that had agreed with the

---

[3] We recognize that this result may leave some uncertainty as to the posture on remand. Our legal conclusion leaves no doubt that the city will ultimately be entitled to prevail such that the trial court would have to affirm the decision of the city. ORS 34.100 (describing the authority of the trial court in writ of review proceedings). However, the procedural quirk presented in this case by the presentation of narrowly drawn and competing summary judgment motions means that the city did not offer a basis for it to prevail on its summary judgment motion. Ultimately, the city may present the legal issue to the trial court in a manner such that the trial court may deny the writ and affirm the city's decision.

state's alternative basis for affirming summary judgment when that basis had not been raised in the post-conviction court).

Reversed and remanded.